SOUTHERN PACIFIC TRANSPOR-
TATION CO., et al., Plaintiffs,

v.

CALIFORNIA (CALTRANS),
et al., Defendants.

No. CV 91–1428 SVW (JRx).

United States District Court,
C.D. California.

Nov. 15, 1991.

Frank Melton, Gordon Goldsmith, Tuttle & Taylor, Los Angeles, Cal., for plaintiffs.

Richard Montevideo, Rutan & Tucker, Costa Mesa, Cal., for defendants.

ORDER GRANTING SUMMARY ADJUDICATION OF ISSUES

WILSON, District Judge.

I. INTRODUCTION

At the Court's direction, the Defendants filed a Motion for Summary Adjudication of Issues pursuant to Federal Rule of Civil Procedure 56(d). In particular, the motion asked the Court to rule on the scope of CERCLA's "petroleum exclusion," as it impacts the facts of this case. The Court held a hearing to consider the motion on October 7, 1991, and the motion was taken

under submission. After considering the arguments of counsel, both written and oral, and the applicable law, both case and statutory, the Court concludes that the Defendants' interpretation of the petroleum exclusion is substantially correct. Accordingly, the Court, as detailed below, hereby ratifies, with a few minor rephrasings, the Defendants' interpretation of the petroleum exclusion as the governing law for this action.

## II. DISCUSSION

### A. *CERCLA's Petroleum Exclusion*

■ Before CERCLA liability may be imposed, it must first be demonstrated that a hazardous substance, as defined under CERCLA, is involved. *See* 42 U.S.C. § 9607(a). To this end, CERCLA defines at length those substances designated as hazardous. 42 U.S.C. § 9601(14). CERCLA's definition of hazardous substances, however, expressly excludes petroleum. In particular, CERCLA states:

> The term [hazardous substance] does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas).

42 U.S.C. § 9601(14). This exclusion is known as the "petroleum exclusion."

### B. *The Scope of the Petroleum Exclusion*

In the case at bar, the Defendants filed the present motion so that the Court could rule on the scope of CERCLA's petroleum exclusion, and thereby narrow the issues for trial.[1] In ruling on this matter, the Court does so with the facts of this case in mind.

### 1. All Forms of Petroleum Covered

■ After examining the law, both statutory and case, the Court concludes that the petroleum exclusion covers all forms of petroleum. In addition, the Court further concludes that the petroleum exclusion applies even though CERCLA-listed hazardous substances are indigenous in the petroleum or are additives normally added to the petroleum. during the refining process. These conclusions are rooted in the plain language of CERCLA, the EPA's interpretation of CERCLA, and Ninth Circuit precedent directly on point.

First, by its express terms, the petroleum exclusion applies broadly to "petroleum, including crude oil *or any fraction thereof.*" 42 U.S.C. § 9601(14) (emphasis added). Accordingly, the plain language of the statute dictates that all forms of petroleum are excluded from CERCLA's reach. This conclusion comports with the accepted rules of statutory construction. *See Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). In this case, no resort to Webster's is needed to understand the words of Congress. Moreover, the Court's conclusion is echoed by the EPA and the Ninth Circuit. *See Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801, 803–05 (9th Cir.1989) (holding that gasoline, a "fraction" of petroleum, is within the petroleum exclusion); 50 Fed.Reg. 13,460 (April 4, 1985) (EPA concluding that the petroleum exclusion applies to all kinds of petroleum products).

Second, the petroleum exclusion applies even though CERCLA-listed hazardous substances are indigenous in the petroleum or are additives normally added to the petroleum during the refining process. To hold otherwise would eviscerate the petroleum exclusion because CERCLA-listed hazardous substances—*e.g.*, benzene, tolu-

---

1. Although the Defendants' motion is limited to statutory construction of CERCLA, summary judgment—or, more properly, summary adjudication of issues—is appropriate for "pure" issues of law. *See Smith v. Califano*, 597 F.2d 152, 155 n. 4 (9th Cir.), *cert. denied sub nom. Smith v. Harris*, 444 U.S. 980, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979).

ene, xylene, and ethylbenzene—are constituent elements of petroleum. In addition, sometimes CERCLA-listed hazardous substances—*e.g.*, lead—are added to the petroleum during the refining process. In *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801 (9th Cir.1989), the Ninth Circuit specifically held:

> We rule that the petroleum exclusion in CERCLA does apply to unrefined and refined gasoline even though certain of its indigenous components and certain additives during the refining process have themselves been designated as hazardous substances within the meaning of CERCLA.

*Wilshire Westwood*, 881 F.2d at 810; *see also* EPA General Counsel Memorandum on "Scope of the CERCLA Petroleum Exclusion Under Sections 101(14) and 104(a)(2)" at 5 (July 31, 1987) [hereinafter 1987 EPA Memorandum] (attached as Ex. 4 to Defs.' Mot. for Summ. Adjud. of Issues) (reaching same conclusion, and relied upon in part by the Ninth Circuit in *Wilshire Westwood*). As such, the Court's identical conclusion merely follows the rule of law established in this Circuit in *Wilshire Westwood*.

Of note, the Court readily finds meritless the Plaintiffs' argument that the Clean Air Act Amendments of 1990 have altered the scope of the petroleum exclusion. In particular, the Plaintiffs point out that hazardous substances under CERCLA include those substances designated as hazardous air pollutants under the Clean Air Act, and that a 1990 amendment of the Clean Air Act designates "Benzene (including benzene from gasoline)" as a hazardous air pollutant. *See* CERCLA, 42 U.S.C. § 9601(14)(E); Clean Air Act, 42 U.S.C.

§ 7412(b)(1). Based on this, the Plaintiffs assert that a necessary consequence is that "benzene from gasoline" is now actionable under CERCLA. This argument rings hollow and is nothing more than a novel reincarnation of arguments rejected by the Ninth Circuit in *Wilshire Westwood*. 881 F.2d at 804–05 (rejecting the argument that the petroleum exclusion does not apply because petroleum's constituent elements— *e.g.*, benzene—are independently listed as CERCLA-listed hazardous substances).

■ For Plaintiffs to suggest that the 1990 amendment of the Clean Air Act changes CERCLA is unpersuasive. To this end, it should be noted that at the time *Wilshire Westwood* was decided, benzene (standing alone) was already listed as a hazardous air pollutant under the Clean Air Act, and despite this fact, the Ninth Circuit ruled as it did. *See* 40 C.F.R. § 61.01 (noting that benzene has been listed as a hazardous air pollutant under the Clean Air Act since June 8, 1977). Accordingly, the Court rejects Plaintiffs' argument that the 1990 amendment of the Clean Air Act requires a new, and narrower, scope for CERCLA's petroleum exclusion.[2]

### 2. Used Petroleum Covered

In *Wilshire Westwood*, the Ninth Circuit noted that "the EPA's interpretation of the scope of the petroleum exclusion should be accorded considerable deference, especially because of the absence of contemporaneous legislative history." 881 F.2d at 810. With this in mind, the Court observes that the EPA has consistently maintained that used petroleum products are covered by the petroleum exclusion. In 1981, for example, the EPA determined that "petroleum

---

**2.** In so ruling, the Court adheres to the venerable rule that implicit repeals of statutes are disfavored. *See United States v. United Continental Tuna Corp.*, 425 U.S. 164, 168, 96 S.Ct. 1319, 1323, 47 L.Ed.2d 653 (1976) ("It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored.") To this end, there is nothing in the legislative history of the Clean Air Act Amendments of 1990 to indicate that Congress intended any change whatsoever in the scope of the petroleum exclusion of CERCLA.

In *Rembold v. Pacific First Fed. Sav. Bank*, 798 F.2d 1307, 1310 (9th Cir.1986), *cert. denied*, 482 U.S. 905, 107 S.Ct. 2480, 96 L.Ed.2d 373 (1987), the Ninth Circuit held: "In the absence of clear Congressional intention, implied repeal must be based on the fact that the statutes at issue are irreconcilable [citations omitted] or there is 'plain repugnance' between them." In this case, however, there is nothing irreconcilable or repugnant about "benzene from gasoline" being subject to the Clean Air Act, but not to CERCLA. To this end, the two statutes at issue address unique environmental hazards.

wastes, including waste oil ... are excluded from the definition of 'hazardous substance' by the specific language of [CERCLA]." 46 Fed.Reg. 22,145 (April 15, 1981). This determination was reiterated by the EPA in 1987: "[N]o petroleum substance, including used oil, can be a 'hazardous substance' except to the extent it is listed as a hazardous waste...." 1987 EPA Memorandum, *supra*, at 2. Furthermore, the EPA has cautioned that "hazardous substances which are added to petroleum or which increase in concentration solely as a result of contamination of the petroleum during use are *not* part of the 'petroleum' and thus are not excluded from CERCLA." *Id.* at 5.

■ Given this Circuit's deference to the EPA's interpretations of CERCLA, and the fact that the above interpretations seem consistent with this Court's understanding of CERCLA, the Court is inclined to endorse the EPA's views. In particular, the Court concludes that used petroleum products are covered by the petroleum exclusion, provided that CERCLA-listed hazardous substances have not been added to the petroleum product during its use, nor have the concentrations of CERCLA-listed hazardous substances in the petroleum product been increased by its use.[3]

### 3. Petroleum-Laden Soil Covered

■ The most critical question before the Court on this motion is whether the petroleum exclusion applies to mixtures of petroleum and soil. This issue is of central importance to the case because the Plaintiffs are seeking CERCLA response costs for soil deposited on their property by the Defendants. Inasmuch as the Defendants will likely assert that their deposited soil contained only petroleum, the Court is asked to determine whether a mixture of petroleum and soil would be actionable under CERCLA. After careful consideration,

the Court concludes that the sheltering sweep of the petroleum exclusion is not affected by the presence or absence of soil.

In large part, the Court's conclusion is common sensical and based upon the plain language of CERCLA. To this end, the petroleum exclusion *unconditionally exempts* petroleum products from CERCLA's reach by declaring them nonhazardous. In addition, soil itself is a nonhazardous substance under CERCLA, unless CERCLA-listed hazardous substances dwell in the dirt. Therefore, the union of one nonhazardous substance (petroleum) with another nonhazardous substance ("clean" soil) can only yield a nonhazardous final product of no concern to CERCLA.

In so ruling, the Court rejects the Plaintiffs' argument that the mixing of petroleum with soil somehow removes the protection of the petroleum exclusion. Plaintiffs' argument is unconvincing because it ignores the reality that oil spills do not occur in a vacuum; rather, quite often such spills occur into soil. Were the Court to embrace Plaintiffs' reasoning, the petroleum exclusion would be gutted because every underground storage tank that leaked petroleum would produce petroleum-laden soil, and thereby trigger CERCLA. Indeed, if the Plaintiffs' argument were correct, then the *Wilshire Westwood* court should have found the petroleum exclusion inapplicable because that case involved soil contaminated with gasoline that leaked from underground storage tanks. *See* 881 F.2d at 802. Yet, the Ninth Circuit held that the petroleum exclusion shielded the defendants from CERCLA liability, despite the presence of "contaminated soils." *See id.*

At best, Plaintiffs argue that the petroleum exclusion applies to mixtures of petroleum and soil only if the mixture remains stationary; that is, the petroleum exclusion does not apply once the mixture is excavat-

---

**3.** The cases cited by the Plaintiffs finding the petroleum exclusion inapplicable to used petroleum products are distinguishable. In particular, in those cases, the courts expressly based their rulings on the presence of added CERCLA-listed hazardous substances that were not origi-

nally a part of the petroleum product. *See, e.g., United States v. Alcan Aluminum Corp.,* 755 F.Supp. 531, 539 (N.D.N.Y.1991); *City of New York v. Exxon Corp.,* 744 F.Supp. 474, 489–90 (S.D.N.Y.1990). This Court's ruling, therefore, is not inconsistent with these precedents.

ed and removed.[4] This argument founders, however, because CERCLA liability hinges upon the presence of a CERCLA-listed hazardous substance on a given property. The origin of the hazardous substance does not affect whether CERCLA may be invoked, rather the origin affects who is liable for the response costs. Therefore, given the structure of CERCLA, the Court rules that a nonhazardous substance—such as petroleum mixed with "clean" soil—remains a nonhazardous substance whether it be found at its origin on Property A, or subsequently after removal to Property B.[5]

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Adjudication of Issues. In so doing, the Court makes the following *Conclusions of Law:*

1. The petroleum exclusion of CERCLA covers all forms of petroleum, including crude oil and any fractions thereof and also including petroleum fuels such as gasoline and diesel fuel, petroleum oils, and other refined petroleum products. This is so even if CERCLA-listed hazardous substances are indigenous in the petroleum or are additives normally added to the petroleum during the refining process.

2. The petroleum exclusion of CERCLA also covers used petroleum products, provided that CERCLA-listed hazardous substances have not been added to the petroleum product during its use, nor have the concentrations of CERCLA-listed hazardous substances in the petroleum product been increased by its use.

3. Soil, that is mixed only with petroleum material within the petroleum exclusion of CERCLA (as defined in 1 and 2 *supra*), is nonhazardous under CERCLA if the soil itself is not a CERCLA-listed hazardous substance.

IT IS SO ORDERED.

---

**4.** Plaintiffs reliance on *United States v. Western Processing Co.,* 761 F.Supp. 713 (W.D.Wash. 1991), is misplaced. In particular, *Western Processing* is distinguishable because the transported sludge at issue had been contaminated with petroleum material *not* within the petroleum exclusion. *Id.* at 717. As such, the court's finding that the sludge was actionable under CERCLA reflected the fact that the petroleum exclusion does not apply to petroleum contaminated with CERCLA-listed hazardous substances. Therefore, the court's statement that "conceptually there is a difference between releases of petroleum ... and the delivery of petroleum related waste material to a disposal or treatment facility" is arguably dictum unnecessary to the court's decision. *Id.* at 721.

**5.** In this regard, the Plaintiffs seem to have confused the solid waste disposal laws, *see* 42 U.S.C. § 6901 *et seq.,* with CERCLA. Needless to say, these two statutory schemes regulate different, albeit similar, environmental wrongs. Significantly, the solid waste disposal laws were amended in 1984 precisely because spills of petroleum from underground storage tanks were not actionable under CERCLA. 130 Cong. Rec. 3830, 3832 (1984) (statement of Sen. Durenburger introducing 1984 amendments to the solid waste disposal laws) (*quoted in Wilshire Westwood,* 881 F.2d at 807).