**ACME PRINTING INK COMPANY, a Delaware corporation, Plaintiff,**

v.

**MENARD, INC., a Wisconsin corporation; Ed's Masonry and Trucking, Inc., a Wisconsin corporation; Edward J. Fadrowski; Marcia Smith; Anthony Ivancich; Bel–Aire Enterprises, Concrete Contractors, Inc., a Wisconsin corporation; Brey's Saw Shop, a partnership; Dan Brey; Max Brey; Cambridge Chemical, Inc., a Wisconsin corporation; Cardinal Fabricating Corp., a Wisconsin corporation; John A. Davis, Jr.; Commercial Heat Treating, Inc., a Wisconsin corporation; Herb Engel Realty Co., Inc., a Wisconsin corporation; Hartwig, Inc., a Wisconsin corporation, d/b/a Hartwig Exhibitions; Helmut's Building Service, Inc., a Wisconsin corporation; Kramer Brass Foundry, Inc., a Wisconsin corporation; Dennis J. Cortte, d/b/a Layton Motor Sales; Jerry Lesperance, d/b/a Lesperance Construction; Lincoln Savings Bank, S.A., f/k/a Lincoln Savings & Loan Association, a Wisconsin chartered savings and loan association; Vernin Tretow, d/b/a Loomis Center Garage; Lubricants, Inc., a Wisconsin corporation; Richard W. Drexler; Robert Howell; Miller Tilt–Top Trailer, Inc., a Wisconsin corporation; Lewis Miller; Robert Bera; Pemper Engineering Co., Inc., a Wisconsin corporation; Frank Povlick, Inc., a Wisconsin corporation; Charles E. Rickheim; Service Painting Corp., a Wisconsin corporation; Sun Control Corporation, a/k/a Milwaukee**

---

Venetian Blind Co., a Wisconsin corporation; Supreme Casting, Inc., a Wisconsin corporation; Texaco, Inc., a foreign corporation; Wauwatosa Savings & Loan, a loan association; Williams Petroleum, Inc., a Wisconsin corporation; CIGNA Property and Casualty Companies, a Connecticut corporation; Ranger Insurance Company, a Delaware corporation; Hartford Accident & Indemnity Company, a Connecticut corporation; Employers Insurance of Wausau, a Wisconsin corporation; and Reliance Insurance Company, a Pennsylvania corporation, Defendants,

v.

TRAVELERS COMPANIES, INC., a Connecticut corporation and Home Insurance Co., Inc., a New Hampshire corporation, Third–Party Defendants.

CAMBRIDGE CHEMICAL, INC., a Wisconsin corporation, Third–Party Plaintiff,

v.

HARTFORD ACCIDENT & INDEMNITY CO., a Connecticut corporation, Third–Party Defendant.

No. 89–C–834.

United States District Court, E.D. Wisconsin.

March 28, 1995.

William S. Roush, Jr., Davis & Kuelthau, Milwaukee, WI, for plaintiff.

Robert W. Corey, Menard, Inc. Legal Dept., Eau Claire, WI, for Menard, Inc.

Edward R. Cameron, Milwaukee, WI, for Ed's Masonry and Trucking, Edward J. Fadrowski [deceased].

Anthony Ivancich, Milwaukee, WI, pro se.

Timothy J. Strattner, Schellinger & Doyle, Brookfield, WI, for Bel–Aire Enterprises Concrete Contractors, Inc.

Bruce C. O'Neill, Fox, Carpenter, O'Neill & Shannon, Milwaukee, WI, for Cambridge Chemical, Inc.

Daniel M. Leep, McNally, Maloney & Peterson, Milwaukee, WI, for Cardinal Fabricating Corp. and Robert Howell.

William Wiseman, O'Neil, Cannon & Hollman, Milwaukee, WI, for Chromium, Inc.

James A. Baxter, Mitchell, Baxter, O'Meara & Mathie, Milwaukee, WI, for Kramer Brass Foundry, Inc.

William H. Harbeck, Quarles & Brady, Milwaukee, WI, for John A. Davis, Jr.

Steve Enich, Charles Johnson, Milwaukee, WI, for Commercial Heat Treating.

Herb Engel Realty Co., c/o Gerald L. Engel, Milwaukee, WI, for Herb Engel Realty Co.

Raymond J. Pollen, Crivello, Carlson, Mentkowski & Steeves, S.C., Milwaukee, WI, for Hartwig, Inc. d/b/a Hartwig Exhibitions.

Stuart B. Eiche, Jacqueline E. Frakes, Eiche & Frakes, Milwaukee, WI, for Helmut's Building Service.

John A. Fiorenza, John P. Hayes, Fiorenza & Hayes, Milwaukee, WI, for Williams Petroleum.

Michael P. Carlton, von Briesen & Purtell, Milwaukee, WI, for Dennis J. Cortte d/b/a Layton Motor Sales.

Michael W. Rohr, Krawczyk & Duginski, Milwaukee, WI, for Lincoln Sav. Bank and Pemper Engineering Co.

Tom Duggan, John T. Lynch, Duggan, Lynch & Fons, Greenfield, WI, for Vernin Tretow d/b/a Loomis Center Garage.

Richard Drexler, c/o Lubricants, Inc., Milwaukee, WI, for Lubricants, Inc.

Thomas S. Sommers, Sommers & Sommers, Milwaukee, WI, for Richard W. Drexler.

David V. Meany, Michael, Best & Friedrich, Milwaukee, WI, for Service Painting Corp.

Richard E. Schmidt, Fellows, Piper & Schmidt, Milwaukee, WI, for Frank Povlick, Inc.

Michael P. Dunn, Davis & Kuelthau, Milwaukee, WI, for Supreme Casting, Inc.

Jeffrey P. Clark, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, for Texaco.

Michael Pfau, Thomas Schrimpf, Hinshaw & Culbertson, Milwaukee, WI, for Ranger Ins. Co.

Richard M. Hagstrom, Zelle & Larson, Minneapolis, MN, Michael R. Wherry, Davis & Kuelthau, Milwaukee, WI, for Employers Ins. of Wausau.

Ralph A. Weber, Kravit, Gass & Weber, Milwaukee, WI, for The Travelers Companies, Inc. and The Home Ins. Co.

Lawrence K. Rynning, Williams & Montgomery, Ltd., Chicago, IL, for Home Ins. Co.

Paul J. Pytlik, Otjen, Van Ert, Stangle, Lieb & Weir, Milwaukee, WI, for Hartford Acc. & Indem.

Jeffrey Leavell, Kevin Harrington, Jeffrey Leavell, S.C., Racine, WI, for Waukesha Rubber Co.

## DECISION AND ORDER

WARREN, Senior District Judge.

Now before the Court is plaintiff Inx International Ink Co. Inc.'s ("Inx")[1] motion for leave to amend its complaint. For the following reasons, this motion will be granted, except to the extent that it seeks to add claims under section 6972(a)(1)(A) of the Resource Conservation Recovery Act ("RCRA").

### I. BACKGROUND

The full factual background of this complex multi-party environmental litigation has been fully discussed in prior opinions of this Court, see Decision and Order of December 5, 1994; Acme Printing Ink Co. v. Menard, Inc., 812 F.Supp. 1498, 1507 (E.D.Wis.1992), and will not be recounted here. In a nutshell, the plaintiff—a generator of hazardous wastes disposed of at the Fadrowski landfill—seeks contribution from other parties—including the current and past owners of the site and other generators that allegedly disposed of hazardous wastes there—for the response costs it has incurred in connection with the

---

1. The plaintiff was formerly known as the Acme Printing Ink Company; its former name still appears in the caption pending this motion to amend.

site. Inx also seeks injunctive relief and civil penalties from other responsible parties.

On December 11, 1991, the plaintiff moved the Court for leave to file an amended and supplemental complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Through this amendment, Inx seeks:

1. To update the prayer for relief to fully reflect all costs incurred (Plaintiff's Motion to File an Amended and Supplemental Complaint at ¶ 1);

2. To add several parties which were generators of waste ultimately disposed of at the Fadrowski landfill via waste oil processor and defendant, Lubricants, Inc. (Plaintiff's Motion to File an Amended and Supplemental Complaint at ¶¶ 2–3);

3. To add the principal of defendant Herb Engel Realty, Inc. as a defendant in this case (Plaintiff's Motion to File an Amended and Supplemental Complaint at ¶ 4);

4. To add the factual allegation that the plaintiff was identified as a party potentially responsible for undertaking or paying for the Remedial Design and Remedial Action at the Fadrowski site, and possibly to amend its claim against the defendants to reflect this fact (Plaintiff's Motion to File an Amended and Supplemental Complaint at ¶ 5);

5. To amend the caption to reflect that several parties have been dismissed from this case, and the plaintiff's name change. (Plaintiff's Motion to File an Amended and Supplemental Complaint at ¶¶ 6–7.)

◼ The Court has held this motion to amend in abeyance pending its decision on several summary judgment motions filed in this action. A decision on these motions was finally rendered on December 5, 1994. Shortly thereafter, at a status conference, the Court took up the issue of Inx's motion for leave to amend its complaint. The Court provided all parties an opportunity to file their objections to the plaintiff's motion, and Inx was given the opportunity to reply.[2]

Objections to Inx's motion have been filed by Waukesha Rubber Co. Inc., Lindberg Corp., and Harley–Davidson Inc. (collectively "the objecting parties"). Each of these companies has been identified by the plaintiff as a generator of waste, waste solvents, and waste oil/water mixtures that were allegedly contaminated with hazardous substances. Inx alleges that these wastes were disposed of through defendant Lubricants, Inc., and that Lubricants commingled and processed the waste, disposing of the contaminated waste from this process at the Fadrowski site. (*See* Decision and Order of December 5, 1994 at 49–50). Thus, Inx alleges, each of these parties, as well as several other parties listed in its motion, are liable under RCRA and the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA").

## II. *LEGAL STANDARD*

◼ A motion for leave to amend is governed by Rule 15 of the Federal Rules of Civil Procedure which provides, in pertinent part, that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Whether to grant or deny leave to amend is thus within the sound discretion of the district court. *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir.1991); *Campbell v. Ingersoll Mill. Mach. Co.*, 893 F.2d 925, 927 (7th Cir.1990). The plain language of the rule, however, directs the court to grant leave "when justice so requires," Fed.R.Civ.P. 15(a), and "the court must respect the spirit of the rule, which is tolerant toward amendments." *Select Creations, Inc. v. Paliafito America, Inc.*, 830 F.Supp. 1213, 1216 (E.D.Wis.1993) (citing *Jafree v. Barber*, 689 F.2d 640, 644 (7th Cir.1982)).

---

2. Harley–Davidson, Inc. has requested leave to file a supplemental brief in opposition to Inx's motion. Harley–Davidson's additional filing was neither included in nor contemplated by this Court's briefing schedule. Nor does the supplemental brief cite new law or newly discovered facts which would affect the ultimate disposition of this motion. Accordingly, this motion will be denied.

■ "Thus, absent a good reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Select Creations,* 830 F.Supp. at 1216 (citing *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir.1981)). Good reasons to deny leave to amend include undue delay, bad faith, undue prejudice to the opposing party, and futility of amendment. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1430 (7th Cir.1993) (citations omitted).

■ However, the parties opposing Inx's motion cite only futility as grounds for denying leave to amend. An amendment is futile only if it fails to allege any facts which could conceivably support a valid theory of liability. *Goulding v. Feinglass,* 811 F.2d 1099, 1103 (7th Cir.1987) (citing *Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir. 1979), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987)). The burden on the objecting parties to show futility of amendment is thus substantial, especially in light of the fact that all material allegations sought to be amended are taken as true. *Select Creations,* 830 F.Supp. at 1220 (citing *Torriente v. Stackler,* 529 F.2d 498, 499 (7th Cir.1976)).

Rule 19 of the Federal Rules of Civil Procedure is also implicated by this motion, inasmuch as the plaintiff seeks to join additional defendants. Under the rule, a person may be joined if, *inter alia,* "in the person's absence complete relief cannot be accorded among those already parties." Fed.R.Civ.P. 19(a)(1). *See also Boulevard Bank N.A. v. Philips Medical Systems Intl. B.V.,* 15 F.3d 1419, 1422 (7th Cir.1994) ("Rule 19(a) requires joinder when the presence of the party to be joined is essential to the litigants' complete relief."). Joinder determinations should be made in light of the general policy of the Federal Rules in favor of "entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (footnote omitted).

## III. *DISCUSSION*

As a preliminary matter, we note that the only objections to Inx's motion for leave to amend its complaint relate to its attempt to add new parties via paragraphs two and three of its motion. Accordingly, because there are no objections to any other amendments sought by Inx, and seeing no basis for denying leave to amend, the Court will summarily grant plaintiff's motion to amend its complaint as reflected in paragraphs one and four through seven of its motion.

Thus, the only issue now in dispute is whether Inx has an adequate basis to assert its RCRA and CERCLA claims against the prospective defendants enumerated in paragraph 2 of its motion. In an attempt to overcome the presumption that leave to amend should be granted, all three objecting parties claim that adding them as defendants would be futile because Inx has no basis for holding them liable for any damages relating to the investigation and clean-up of the Fadrowski site.

### A. *RCRA LIABILITY*

The Court has already extensively discussed the statutory and regulatory scheme established by RCRA and the Wisconsin Hazardous Waste Management Plan ("WHWMP") in a prior opinion (*see* Decision and Order of December 5, 1994 at 8–10, 13–20); there is no reason to cover that ground again here. In sum, RCRA permits any citizen to file suit in federal district court against any person to enforce the operating and permitting requirements of the regulatory scheme under 42 U.S.C. § 6972(a)(1)(A), or to abate an imminent and substantial endangerment to human health or the environment under 42 U.S.C. § 6972(a)(1)(B).[3]

3. Subsection (a) provides that:
 [A]ny person may commence a civil action on his own behalf
 (1)(A) against any person ... who is alleged to be in violation of any permit, standard, regula-

tion, condition, requirement, prohibition, or order which has become effective pursuant to this Act.
 (B) against any person ... who has contributed to or is contributing to the past or present

### 1. Section 6972(a)(1)(A)

■ Inx apparently wishes to add a claim against each prospective defendant under section 6972(a)(1)(A) of the statute. The objecting parties oppose this, arguing that Inx's amendment adding a claim against them under subsection (a)(1)(A) would be futile because the citizen suit provision of the statute has been pre-empted by the WHWMP. Citing *Clorox Co. v. Chromium Corp.*, 158 F.R.D. 120 (N.D.Ill.1994) and *Thompson v. Thomas*, 680 F.Supp. 1 (D.D.C.1987), they argue that because the WHWMP operates "in lieu of" RCRA, and because the WHWMP does not contain a citizen suit provision, this Court does not have jurisdiction to hear a citizen suit to enforce either RCRA or the WHWMP.

The objecting parties' argument is contrary to the clear language of the statute. While it is certainly true that a plaintiff "may only sue for violations of the state regime and not for violations of the federal regime," (Decision and Order of December 5, 1994 at p. 14 n. 1), subsection (a)(1)(A) explicitly permits a citizen suit to enforce any regulation "which has become effective pursuant to this Act." The approved state regulations embodied in the WHWMP have "become effective" under section 6972 of RCRA and thus remain enforceable under RCRA's citizen suit provision.[4] *See Sierra Club v. Chemical Handling Corp.*, 824 F.Supp. 195, 197 (D.Colo.1993) (citing *Lutz v. Chromatex, Inc.*, 725 F.Supp. 258, 261 (M.D.Penn.1989)).

■ Notwithstanding the availability of a citizen suit to enforce the WHWMP regulations, the Court concludes that Inx's attempt to add a claim under this subsection would nevertheless be futile. The Court has already concluded that the Fadrowski site is not an operating hazardous waste facility, and is therefore not subject to—and thus not in violation of—the WHWMP. (Decision and Order of December 5, 1994 at 14–17.) We reaffirm that holding *here. Section 6972(a)(1)(A) does not apply to the Fadrowski site because it is not an operating hazardous waste facility. Although subsection (a)(1)(A) also permits citizen suits to enforce the WHWMP regulations relating to the generation, treatment, storage or disposal of hazardous wastes, *see* Wis.Stats. § 144.64, we have already concluded that the entire right of action embodied in subsection (a)(1)(A) of RCRA only permits suits for *on-going* violations of the WHWMP. (*See* Decision and Order of December 5, 1994 at p. 16) ("Furthermore, RCRA and the WHWMP are primarily prospective regulatory regimes. Neither was designed to address violations that occurred in the past.") (citations omitted). Inx's cause of action against the prospective defendants could only be based on wholly past violations of the WHWMP, and thus is barred under subsection (a)(1)(A).

Therefore, none of the prospective defendants can be liable for violating the WHWMP. Accordingly, Inx's request to add additional defendants under a § 6972(a)(1)(A) theory would be futile and will thus be denied.

### 2. Section 6972(a)(1)(B)

The objecting parties have also opposed Inx's attempt to add them as parties under subsection (a)(1)(B) of RCRA. As grounds therefor, they point to 42 U.S.C. § 6972(b)(2)(B)(iv), which restricts the availability of citizen suits to abate an imminent and substantial danger as follows:

No action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or conditions which may have contributed to or are contributing to the activities which may present the alleged endangerment ... has issued an administrative or-

handling, storage, treatment, transportation, or disposal or any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.
42 U.S.C. § 6972(a)(1)(A), (B).

**4.** The Court is aware of some authority to the contrary. *See, e.g., Dague v. City of Burlington,* 935 F.2d 1343, 1352 (2d Cir.1991) *rev'd on other grounds,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Murray v. Bath Iron Works Corp.,* 867 F.Supp. 33, 42 (D.Maine 1994); *Thompson,* 680 F.Supp. at 3. However, we are unpersuaded by the reasoning of these decisions and decline to follow their holdings.

der ... under section 106 of [CERCLA][5] ... pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action.

42 U.S.C. § 6972(b)(2)(B)(iv). It is undisputed that the United States Environmental Protection Agency ("EPA") has issued CERCLA section 106 orders to various responsible parties ordering remedial action at the Fadrowski site. Thus, argue the objecting parties, subsection (b)(2)(B)(iv) bars Inx's citizen suit against them, and joining them under this theory of liability would be futile.

In response, the plaintiff first points to a subsequent clause in subsection (b)(2)(B)(iv) which provides that "actions under subsection (a)(1)(B) are prohibited only to the scope and duration of the [section 106] administrative order." 42 U.S.C. § 6972(b)(2)(B)–(iv). Inx claims that because the section 106 orders were issued to parties other than the prospective defendants, its citizen suit is beyond the scope and duration of these orders.

We disagree with the plaintiff's interpretation of the "scope and duration" clause. In our view, the "scope and duration" clause manifests Congress's desire to permit citizen suits to be brought to remedy imminent and substantial dangers which are not being addressed by existing section 106 orders. It is the scope of the abatement action that is relevant, not to whom the orders were issued.

The cases cited by Inx in support of the contrary position are inapposite. The court in *Coburn v. Sun Chemical Corp.*, 1988 WL 120739, * 12, 28 E.R.C. 1665 (E.D.Penn.1988) concluded that a citizen suit seeking the cleanup of *surface contamination* was outside the scope of an EPA order to remediate the *water supply*. Similarly, in *Fishel v. Westinghouse Electric Corp.*, 617 F.Supp. 1531, 1539 (M.D.Penn.1985), the court held

that a citizen suit seeking to address *subsurface contamination* and its effect on drinking water was outside the scope of an EPA order to remove *surface contaminants*, and the citizen suit was therefore not barred by subsection (b)(2)(B)(iv). Neither of these cases suggests that a citizen suit to accomplish the same remedial purpose as an EPA section 106 order would be outside the scope of the order simply because it was issued to a different party.

 Inx next claims that as a matter of public policy, the Court should not permit the prospective defendants to escape RCRA liability through the application of subsection (b)(2)(B)(iv). According to Inx, the prospective defendants "should not be rewarded for adamantly doing nothing and allowing other persons to accept the burden of dealing with their wastes and hazardous substances;" to permit them to escape liability would "encourage waste generators to refuse to respond to the pollution that their wastes have caused." (Plaintiff's Supplemental Reply Brief at 15.) We find this argument unpersuasive. It is not the Court's job to determine whether the exclusion provided by subsection (b) is appropriate environmental policy; we will apply the law as written by Congress. Moreover, this jurisdictional exclusion, if applied here, would not be inconsistent with the overall structure and purpose of RCRA.

Finally, Inx argues that its claims against these prospective defendants should relate-back to the date of the original complaint; at that time no CERCLA section 106 orders had been issued. Therefore, according to Inx, it should not be barred from joining these additional parties because jurisdiction, once attached, cannot be ousted by subsequent events.

 The first issue is whether the amendments proposed by Inx should relate back to the date of the original complaint. To make this determination, we look to Rule 15(c) of

---

**5.** Section 106 of CERCLA provides, in pertinent part:

"[W]hen the President determines that there may be an imminent and substantial endangerment to public health or welfare or the environment because of an actual or threatened

release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat." 42 U.S.C. § 9606.

the Federal Rules of Civil Procedure.[6] An amendment relates back under Rule 15(c) if the following requirements are met: (1) the allegations in the amended complaint must have arose out of the same conduct, transaction or occurrence as the original claims in the original complaint; (2) the prospective party has received adequate notice of the suit such that it will not be prejudiced in defending itself; and (3) the prospective party knew or should have known that but for a mistake in identifying the proper party it would have been included in the original complaint. *Wood v. Worachek,* 618 F.2d 1225, 1229 (7th Cir.1980). *See also Hill v. Shelander,* 924 F.2d 1370, 1375 (7th Cir.1991).

■ The Court is satisfied that these requirements have been met. There is no question that the allegations Inx wishes to assert against these additional defendants arose out of the same conduct as the allegations underlying Acme's original complaint; it is all related to the disposal of waste at the Fadrowski site. In addition, prospective defendants received notice of the plaintiff's request to amend in 1991, almost two years *before* EPA issued its section 106 orders. There is no claim of prejudice or hardship to the prospective defendants (other than that which normally attaches to being named as a defendant in a lawsuit), nor could such an allegation be supported. Moreover, the prospective parties certainly should have known that they were likely defendants in this case, given their relationship with Lubricants Inc. Finally, equitable considerations militate in favor of permitting relation-back under these circumstances. Had the Court not held the plaintiff's motion to amend in abeyance for so long, subsection (b) clearly would not have precluded the assertion of the plaintiff's claims. Therefore, we conclude that the plaintiff's amendment adding new parties should relate back, if not to the time of the original complaint, at least to the time that the plaintiff's request to amend was filed. Either way, the Court will make its jurisdiction determination according to the factual circumstances present before the section 106 orders were issued.

■ Having so concluded, the Court must next address the question of whether section 6972(b) acts to oust a court's jurisdiction once a section 106 order is issued or whether the provision merely acts as a prospective bar to initiating lawsuits, but which does not prevent a court from hearing a citizen suit as long as no section 106 orders were issued prior to the commencement of the suit. The normal rule is that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport–McMoRan, Inc. v. K.N. Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 860, 112 L.Ed.2d 951 (1991) (per curiam). *See also Gwaltney v. Chesapeake Bay Foundation,* 484 U.S. 49, 69, 108 S.Ct. 376, 387, 98 L.Ed.2d 306 (1987) (Scalia, J., concurring) ("Subject matter jurisdiction 'depends on the state of things at the time of the action brought'; if it existed when the suit was brought, 'subsequent events' cannot 'ous[t]' the court of jurisdiction.") (quoting *Mollan v. Torrance,* 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824)); *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 824, 6 L.Ed. 204 (1824) (jurisdiction depends "on the state of things when the action is brought").

■ However, an act of Congress can in fact divest a court's jurisdiction over a particular matter. The Constitution is explicit in its authorization of Congress to make exceptions to the appellate jurisdiction of the Supreme Court. U.S. CONST., Art. III, Sec. 2. *See also Ex Parte McCardle,* 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1868). The extent of Congress's power to limit the scope of jurisdiction of lower federal courts is less clear; however, the generally accepted view is that "having the right to prescribe, Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies. Courts created by statute can have no jurisdiction but such as the

---

**6.** Although Rule 15(c) of the Federal Rules of Civil Procedure normally governs situations in which the statute of limitations is at issue, it is our view that the plaintiff must establish that the requirements of Rule 15(c) are satisfied in order to justify factual relation-back under the current circumstances as well.

statute confers." [7] *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850).

Thus, the Court must determine whether Congress intended section 6972(b) of RCRA to oust courts hearing citizen suits from jurisdiction once EPA steps in and orders potentially responsible parties ("PRPs") to take removal and/or remedial action at a site. It is clear that the purpose of the subsection (b) limitations on citizen suits is to prevent such suits where the agency has already responded to the "imminent and substantial danger" posed by the site. *See Acme Printing Ink Co. v. Menard, Inc.,* 812 F.Supp. 1498, 1507 (E.D.Wis.1992). *See also Coalition for Health Concern v. LWD, Inc.,* 834 F.Supp. 953, 957 (W.D.Kenty.1993) ("The express purpose of a citizen suit under § 6972(a)(1)(B) is to remedy an imminent and substantial endangerment to health or the environment. Accordingly, § 6972(b)(2)–(B) precludes such suits where the EPA has already acted to remedy an imminent and substantial endangerment.")

However, although it is evident that the intent of this provision is to prohibit citizen suits once EPA has acted, the language and structure of the provision supports the view that this is a prospective jurisdictional limitation rather than a provision designed to extinguish on-going lawsuits. First, section 6972(b)(2)(B)(iv) prohibits the "commencement" of a citizen suit once section 106 orders are issued; it does not prohibit the "maintenance" of such a suit. *See generally Gwaltney,* 484 U.S. at 68, 108 S.Ct. at 387 (Scalia, J., concurring) (noting the difference between "commencing" and "maintaining" a lawsuit). This choice of words evinces Congress's intent to bar the filing of the suit rather than to extinguish existing citizen suits based on subsequent action by EPA. *See Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1574 (5th Cir.1988) ("[Section] 6972(b)(2)(B) ... provides that no action may be *commenced* under § 6972(a)(1)(B)" if EPA has begun remediation) (emphasis added); *Proffitt v. Commissioners, Township of Bristol,* 754

F.2d 504, 505 (3d Cir.1985) (no RCRA citizen suit "may be *brought*" if EPA diligently prosecuting action) (emphasis added); *McGregor v. Industrial Excess Landfill, Inc.,* 709 F.Supp. 1401, 1408 (N.D.Ohio 1987) (RCRA "expressly prohibits the *filing* of private suits" once EPA takes action) (emphasis added), *aff'd,* 856 F.2d 39 (6th Cir.1988).

Moreover, the legislative history of § 6972(a)(1)(B) supports this reading. Throughout the legislative history, Congress refers to a citizen's right to *bring* a lawsuit; nowhere in any of the reports does it suggest that subsequent EPA action ousts jurisdiction over an on-going suit. *See, e.g.,* 130 Cong.Rec. 59151 (daily ed. July 25, 1984) (statement of Sen. Mitchell) ("This bill authorizes citizens to *bring* imminent hazard suits in the absence of EPA action.") (emphasis added); House Conf.Rep. No. 98–1133, 98th Cong., 2d Sess. (1984) *reprinted in* U.S.C.C.A.N. at 5576, 5688 (recognizing provisions of § 6972(b) as limiting citizen's "right of action"). In addition, the House Report on the 1984 amendments to the citizen suit provision notes that "nothing in this provision is intended to preclude the EPA ... from intervening in a suit filed by a citizen...." House Rep. No. 98–198 98th Cong., 2d Sess. (1984) *reprinted in* U.S.C.C.A.N. at 5612. This suggests that once a citizen suit is properly pending, EPA does not eliminate the suit by taking remedial action; instead, its proper course is to intervene in the on-going citizen suit.

Thus, upon examining the statutory language, legislative history, and case law interpreting subsection (b)(2), the Court concludes that Congress did not intend this provision to oust jurisdiction over an on-going lawsuit, but instead intended to prohibit the commencement of a citizen suit after such orders have been issued. Therefore, because Inx's amendment will relate back to a time prior to the issuance of the section 106 orders, we conclude that section 6972(b)(2)(B)(iv) does not bar the joinder of these additional defendants.

---

**7.** While this general rule is subject to some limitations, for example a "heightened showing" of Congressional intent to preclude jurisdiction for constitutional claims, *see Webster v. Doe,* 486

U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), because no constitutional rights are implicated by Inx's citizen suit, these limitations do not apply.

We reach this conclusion somewhat reluctantly. The entire point of the citizen suit provision in RCRA section 6972(a)(1)(B) is to abate imminent and substantial dangers. Similarly, section 106 of CERCLA permits the government to "secure such relief as may be necessary to abate" an "imminent and substantial endangerment to public health or welfare or the environment." 42 U.S.C. § 9606(a). Thus, inasmuch as both provisions are designed to accomplish the same purpose, the existence of the section 106 orders would appear to make the RCRA citizen suit superfluous. Nevertheless, based on the foregoing reasoning, we cannot conclude that section 6972(b) of RCRA authorizes EPA to extinguish our jurisdiction over this citizen suit by taking action under CERCLA.[8]

Therefore, based on the foregoing analysis, the Court concludes that the objecting parties have not met their burden of showing that the plaintiff cannot plead or prove any set of facts which would establish the RCRA section 6972(a)(1)(B) liability of the parties its seeks to add in paragraph two of its motion to amend. Accordingly, the Court concludes that this amendment would not be futile and thus grants the plaintiff's motion in this regard.

### B. CERCLA LIABILITY

In order to maintain a CERCLA cause of action against the prospective defendants, the plaintiff must establish the following elements: (1) the site in question is a "facility" as defined by the statute; (2) the defendant is a responsible person; (3) a release or threatened release of a hazardous substance has occurred; and (4) the release or threatened release has caused the plaintiff to incur response costs. (See Decision and Order of December 5th, 1994 at p. 21 (citing Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co., 14 F.3d 321, 325 (7th Cir.1994).) Because Inx alleges that the prospective defendants are liable as generators of hazardous wastes, it need not establish that any individual defendant's waste was the cause or a cause of the release. Id. at p. 27 (citing Dedham Water Co. v. Cumberland Farms Dairy, 889 F.2d 1146, 1157 (1st Cir.1989) and United States v. Ottati & Goss Inc., 630 F.Supp. 1361, 1405–06 (D.N.H.1985).) Rather, the plaintiff "must merely 'present evidence that a generator defendant's waste was shipped to a site and that hazardous substances similar to those contained in the defendant's waste remained present at the time of release.'" Id. at 27–28 (quoting United States v. Monsanto, 858 F.2d 160, 169 n. 15 (4th Cir.1988), cert. denied, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989)).

That the Fadrowski site is a facility, that there has been a release of a hazardous substance, and that Inx incurred response costs as a result of the release are all undisputed for the purposes of this motion. The basis for the objecting parties opposition to adding CERCLA claims against them is that such an amendment would be futile because (1) they are not responsible parties under the statute, and (2) any waste they may have disposed of does not fall within the ambit of the statutory CERCLA scheme because of CERCLA's petroleum exclusion.

### 1. Section 107(a)(3) Liability

CERCLA defines a responsible party as, inter alia, "any person who by contract, agreement or otherwise arranged for the disposal or treatment . . . of hazardous

---

**8.** Although the issue of whether Inx's section 6972(a)(1)(B) claims are moot is not currently before the Court, this issue will probably need to be resolved eventually. Courts are split on the question of whether subsection (a)(1)(b) permits a citizen plaintiff to obtain only an equitable remedy (an injunction compelling the abatement of the hazard at the site) or whether a citizen plaintiff may also collect restitution for clean-up costs incurred. Compare Commerce Holding Co., Inc. v. Buckstone, 749 F.Supp. 441, 445 (E.D.N.Y.1990) ("While injunctive relief is available under § 6972(a)(1)(B), the statute does not provide a private action for damages. Nor should one be implied.") (citations omitted) and Walls v. Waste Resource Corp., 761 F.2d 311, 316 (6th Cir.1985); Murray v. Bath Iron Works Corp., 867 F.Supp. 33, 42 (D.Maine 1994); Fallowfield Development Corp. v. Strunk, 1993 WL 157723 at *14 (E.D.Penn.1993) with KFC Western Inc. v. Meghrig, 49 F.3d 518 (9th Cir.1995) (permitting a citizen plaintiff to bring a restitution action under section 6972(a)(1)(b)). If only injunctive relief is available to the plaintiff and the hazard alleged has been abated, there may not be a case or controversy present and the action may be moot.

substances owned or possessed by such person" at any facility. 42 U.S.C. § 9607(a)(3). The objecting parties claim that they are not responsible parties under CERCLA because they did not directly dispose of waste at the Fadrowski site, but instead turned it over to Lubricants, Inc., which ultimately disposed of the waste. Citing *Chatham Steel Corp. v. Brown*, 858 F.Supp. 1130 (N.D.Fla.1994), the objecting parties argue that, as "indirect sellers" of waste, they "should be treated differently under CERCLA" because " '[if] a party does not exercise some control over the location and method of disposal, then it should not be held liable under CERCLA.... Under these circumstances, imposing liability would not only be unfair, it would not further CERCLA's worthy goals.' " (Harley Davidson's Brief in Opposition to Plaintiff's Motion for Leave to Amend at p. 3 (quoting *Chatham*, 858 F.Supp. at 1144).)

As a preliminary matter, we note that the language in *Chatham* relied on by the objecting parties is not particularly authoritative. The *Chatham* Court explicitly declined to decide whether CERCLA liability attached under similar factual circumstances, denying the cross-motions for summary judgment before it. Moreover, within the same passage cited by the objecting parties, the *Chatham* Court also stated that "parties cannot escape liability under CERCLA merely because they pawned their liability off on a broker or middleman.... [P]ersons who generate hazardous substances or arrange for their disposal should not be allowed to shirk their duties under CERCLA by operating blindfolded."[9] *Id.* at 1144.

■ Irrespective of the language and/or holding of *Chatham*, the objecting parties position is contrary to the language of CERCLA and the well-accepted interpretation of the statute. First and foremost, CERCLA itself provides that "[n]o indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer [CERCLA liability.]" 42 U.S.C. § 9607(e)(1). In addition, the overall structure of the statute contrasts with the interpretation urged by the prospective defendants. CERCLA imposes strict liability on generators of hazardous waste, subject only to the exclusive defenses enumerated in section 107(b).[10] *See New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir.1985) ("Interpreting section 9607(a)(1) as including a causation requirement makes superfluous the affirmative defenses provided in section 9607(b), each of which carves out from liability an exception based on causation.").

■ Moreover, virtually every court to address this issue has concluded that a defendant cannot escape generator liability simply because it does not choose the ultimate destination of its waste. According to one court:

The assertion that CERCLA requires a generator who arranges for disposal to know where the disposal is to take place before liability is established is unfounded.... To give the statute [that] interpretation ... would allow generators of hazardous wastes to escape liability under CERCLA by closing their eyes to the method in which their hazardous wastes were disposed of.

*United States v. Ward*, 618 F.Supp. 884, 895 (E.D.N.C.1985). *See also United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1382 (8th Cir.1989) (permitting defendants to escape liability as a result of their ignorance of place and manner of ultimate disposal "would allow defendants to simply 'close their eyes' to this method of disposal of their hazardous substances, a result contrary to the policies underlying CERCLA"); *United States v. Summit Equipment & Supplies Inc.*, 805 F.Supp. 1422, 1432 (N.D.Ohio 1992) ("[Defendants] cannot avoid [CERCLA] liability simply by keeping blinders on during the transaction."); *United States v. Parsons*, 723 F.Supp. 757, 762 (N.D.Ga.1989) ("The fact that [the defen-

9. Ultimately, the *Chatham* Court settled on the following test for "indirect seller" liability: such a defendant is required to have actual or constructive notice that its wastes would eventually end up with the recycler in order for liability to attach. *Chatham*, 858 F.Supp. at 1144.

10. None of the CERCLA affirmative defenses are asserted in opposition to the plaintiff's motion.

dant] did not personally select the site where the drums were to be dumped does not mean that he did not arrange for their transportation to a facility."); *United States v. Bliss,* 1988 WL 169818, 20 ELR 20879, 20881 (E.D.Mo.1988) ("Section 107(a)(3) also does not require the party who arranges for disposal to know where the substances will be deposited."). Furthermore, even if a generator-defendant takes affirmative steps to properly dispose of its hazardous wastes, it will still be a responsible party under section 107(a)(3). *See Aceto,* 872 F.2d at 1381. *See also O'Neil v. Picillo,* 682 F.Supp. 706, 722–23 (D.R.I.1988) ("[T]he strict liability scheme of CERCLA imposes liability upon generators even though they may have taken precautions in selecting what appeared to be a responsible transporter."), *aff'd,* 883 F.2d 176 (1st Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990).

 One of the objecting parties argues that it cannot be held liable as an arranger because it did not engage in an intentional act of disposal or treatment. Rather, it claims it simply "returned hydraulic oil to Lubricants for Lubricants' use." (Waukesha Rubber Co. Inc.'s Objection to Complaint Amendment at p. 4.) Seventh Circuit precedent does require that a generator-defendant engage in "intentional action." *Amcast Industrial Corp. v. Detrex Corp.,* 2 F.3d 746, 751 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994). However, *Amcast* does not does not stand for the proposition that a defendant cannot be liable under CERCLA because it did not arrange for disposal at a particular site.

In *Amcast,* the Court found that a defendant was not liable as an "arranger" because its virgin chemicals were accidently spilled while being transported. *Amcast,* 2 F.3d at 751 ("No one *arranges for* an accident....") (emphasis added). However, the generator of the spilled chemicals was not transporting them in order to dispose of them; rather, it was shipping the chemicals to a customer for use in the customer's manufacturing process. Nothing in *Amcast* suggests that the Seventh Circuit intended to add the requirement that the generator knew where and how its wastes would be disposed of. In fact, the

Court went on to conclude that "[t]he words 'arranged with a transporter for disposal or treatment' appear to contemplate a case in which a person or institution that wants to get rid of its hazardous wastes hires a transportation company to carry them to a disposal site." *Id.* Thus, the intentional act required is not disposing of the waste at the particular site, but rather is simply the intentional disposal of waste.

Waukesha Rubber further contends that it never "arranged" for the "disposal" of "waste." Invoking the "useful products" doctrine, it argues that its used hydraulic oil was a useful product, which it sold to Lubricants. *See Florida Power & Light Co. v. Allis Chalmers Corp.,* 893 F.2d 1313, 1317 (11th Cir. 1990) ("If a party merely sells a product, without additional evidence that the transaction includes an 'arrangement' for the ultimate disposal of a hazardous substance, CERCLA liability will not be imposed."). However, "[m]erely characterizing a transaction as a sale [of a useful product] cannot insulate a party from CERCLA liability." *Douglas County v. Gould, Inc.,* 871 F.Supp. 1242 (D.Neb.1994).

In our view, the used hydraulic oil generated by the prospective defendants was very likely waste which was of no further use to those companies. It appears likely that the sale of the used oil to Lubricants was an attempt to "get rid of it" and was thus an arrangement for disposal under the statute. The fact that Lubricants had some use for this waste makes no difference. *Chesapeake and Potomac Telephone Co. of Virginia v. Peck Iron & Metal Co. Inc.,* 814 F.Supp. 1269, 1275 (E.D.Va.1992) ("Defendants cite no case which supports the proposition that, merely because a hazardous product could still be reclaimed from an otherwise deceased product, that the otherwise deceased product was 'new and useful' such that CERCLA liability would not attach if the product was sold.").

Ultimately, the question of whether these prospective defendants arranged for the disposal of their wastes via Lubricants or sold a useful product to another party requiring a fact-intensive inquiry; it is improperly resolved at this stage of the litigation. *See KN*

*Energy Inc. v. Rockwell Intl. Corp.,* 840 F.Supp. 95, 98 (D.Colo.1993). We clearly cannot say that the plaintiff will be unable to establish that Waukesha Rubber, and the other prospective defendants, did not arrange for the disposal of its waste oil; therefore, we cannot say that permitting Inx to amend its complaint to add these parties would be futile.

Because the Court declines to adopt an "indirect seller" defense to CERCLA, and because it declines to find that the prospective defendants are free from liability based on the "useful products" doctrine, Inx may be able to establish that the prospective defendants are responsible parties under section 107(a)(3). Therefore, the Court concludes that Inx's request to add the prospective defendants as additional potentially responsible parties pursuant to CERCLA would not be futile.

### 2. *CERCLA's Petroleum Exclusion*

■ CERCLA excludes the following from its definition of hazardous substances: "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance, ... [as well as] natural gas, natural gas liquids, liquified natural gas or synthetic gas useable for fuel." 42 U.S.C. § 9601(14). In its prior opinion, this Court concluded that the petroleum exclusion also excluded as CERCLA hazardous substances the hazardous constituents of petroleum products, even if those constituents were independently listed as hazardous substances under CERCLA. (*See* December 5th, 1994 Decision and Order at p. 70–71 (citing *Wilshire Westwood Associates v. Atlantic Richfield Corp.,* 881 F.2d 801, 810 (9th Cir.1989).)

The objecting parties contend that, since they disposed only of used oil, their wastes are excluded from CERCLA coverage by virtue of the petroleum exclusion, and thus Inx cannot make out its prima facie case for liability. (Lindberg's Brief in Opposition to Plaintiff's Motion to Amend at 8) (citing *Mid Valley Bank v. North Valley Bank,* 764 F.Supp. 1377 (E.D.Cal.1991) (used oil or waste oil subject to petroleum exclusion) and *Southern Pacific Trans. Co. v. California (Caltrans),* 790 F.Supp. 983 (C.D.Cal.1991)

(waste oil and petroleum-laden soil covered by petroleum exclusion).)

However, the plaintiff alleges that the waste oil disposed of by the prospective defendants through Lubricants was contaminated with hazardous substances other than those which are constituents of petroleum products or in greater than normal concentrations. If this allegation is true, these wastes do not fall within the petroleum exclusion, and thus provide a basis for CERCLA liability. *See United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 266–67 (3rd Cir. 1992); *Mid Valley Bank,* 764 F.Supp. at 1384; *Southern Pacific,* 790 F.Supp. at 986. Inx need not prove this additional contamination at this stage of the litigation. Its plausible allegation that the wastes of the prospective defendants were contaminated with hazardous substances is enough to disprove the futility of amendment. Therefore, the Court concludes that the petroleum exclusion does not provide a basis upon which the prospective defendants can avoid CERCLA liability.

### IV. *SUMMARY*

For the foregoing reasons, the Court concludes that permitting the plaintiff to amend its complaint will not be futile, except to the extent it seeks to add claims against new parties under 42 U.S.C. § 6972(a)(1)(A). Furthermore, the interests of justice and the spirit of the Federal Rules of Civil Procedure militate in favor of permitting amendment. Accordingly,

**IT IS HEREBY ORDERED** that the plaintiff's motion for leave to amend is granted. However, the plaintiff may not assert RCRA subsection (a)(1)(A) claims against any of the additional defendants it wishes to join.

**SO ORDERED.**