UNITED STATES of America, Plaintiff,

v.

GORDON STAFFORD, INC., Harry Gordon Stafford, Marion Engineering Company, Inc., Gary L. Powell, and Atlantic Richfield Company, Inc., Defendants.

Civ. A. No. 90–102–C.

United States District Court,
N.D. West Virginia.

Jan. 14, 1993.

Patrick M. Flatley, Asst. U.S. Atty., Wheeling, WV and Robin P. Lancaster, U.S. Dept. of Justice, Washington, DC, for plaintiff.

James C. West, Jr., W. Henry Lawrence, IV, Clarksburg, WV, Samuel T. Perkins, Washington, DC and Timothy J. Padden, Morgantown, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

MAXWELL, Chief Judge.

The Court has before it in the above-styled civil action defendant Atlantic Richfield Company's ("ARCO") Motion to Dismiss for Failure to State a Claim upon which Relief may be Granted, or in the alternative, for Summary Judgment, filed on January 22, 1991.[1] In its Motion, defendant ARCO requests that the Court grant its motion on the grounds that the facts alleged are insufficient to establish a basis for holding ARCO liable for cleanup costs under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* (1988). Also before the Court is the United States' Motion for Summary Judgment and In Opposition to ARCO's Motion filed on April 16, 1991, and ARCO's Motion for Protective Order filed on January 2, 1992. The background of this civil action deserves some mention in considering the above-referenced motions.

In June 1983, as part of the process of phasing out its mining operations at its Jackpile Mine in New Mexico, ARCO held a public auction, without reserve, to sell surplus equipment. At the auction, defendant Stafford, on behalf of his corporation, purchased eleven electrical transformers for $1,500. The auction catalog stated that all items were sold "as is." None of the transformers were described as inoperable or sold as scrap. The complaint does not allege that any of these transformers were leaking or that any of them were not in working condition.

After shipping the transformers to West Virginia, defendant Stafford advertised them for sale. In 1987, Stafford sold the transformers to defendant Powell, acting on behalf of Marion Engineering Company. Powell had the transformers tested and discovered that one transformer was a PCB transformer (in excess of 500 ppm PCBs) and six were PCB-contaminated transformers (50–500 ppm PCBs). Powell and Stafford arranged for an individual by the name of James Badgett to dispose of the seven transformers along with two 55–gallon drums of hazardous substances. Badgett disposed of the transformers and hazardous substances on private property in Harrison County. In May 1987, the site was discovered by the West Virginia Department of Natural Resources. Response action by the United States, as of the date of the commencement of this action, has cost $229,503.

In an effort to obtain reimbursement of response costs incurred over the release of hazardous substances from the Harrison County site, the United States filed the Complaint in this action on September 26, 1990, pursuant to CERCLA, 42 U.S.C. § 9607. The United States also seeks a declaratory judgment, under 42 U.S.C. § 9613(g)(2), on liability that will be binding in any subsequent action to recover further response costs incurred by the United States. The United States alleges, among other things, that the sale of the transformers makes ARCO liable as a person who "arranged for disposal" under section 107(a)(3) of CERCLA.

---

1. Inasmuch as matters outside the pleading are presented to and not excluded by the Court, the Court addresses defendant ARCO's motion as a motion for summary judgment.

Section 107(a)(3) of CERCLA imposes liability on

> any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances. 42 U.S.C. § 9607(a)(3) (1988).

The essence of ARCO's Motion for summary judgment is that it, as a seller of a useful product, is not subject to liability under CERCLA. ARCO maintains that it sold transformers in working condition to a dealer in used mining equipment and, as such, it did not arrange for the disposal of a hazardous substance.

In opposition, the Government claims that the transformers were "old, heavily used" and "at the end of their useful life." The government also contends that the transformers were "so contaminated" as to render them "virtually worthless for their customary purposes." Further, the government contends that the 1983 auction was intentionally structured so that ARCO could avoid disposal obligations. All of these factors taken together, alleges the government, resulted in an arrangement for disposal as that phrase is used under CERCLA.

From the text of Rule 56 of the Federal Rules of Civil Procedure, it is clear that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Motions for summary judgment impose a difficult standard on the movant; for, it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir.1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which "a fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

Upon reviewing all matters of record, the Court is of the opinion that there does not exist a genuine issue as to any material fact with respect to ARCO's liability under CERCLA and the Court can rule as a matter of law on that issue. The Court believes that nothing in the record is sufficient to support a reasonable inference that the sale of the transformers by ARCO constituted an arrangement for disposal. Courts construing liability under section 107(a)(3) of CERCLA have liberally interpreted "arranged for disposal" to include a "sale" where the sale was an affirmative act to dispose of waste.[2] Although the Court recognizes that a sale of a useful product, under some circumstances, could amount to an arrangement for disposal, the

---

**2.** See *Jersey City Redevelopment Authority v. PPG Industries, Inc.*, 866 F.2d 1411, 28 Env't Rep.Cas. 1873, 1879 (3d Cir.1988) (sale of soil contaminated with chromium is clearly arranging for the disposal of a hazardous substance creating liability under CERCLA § 107(a)(3)); *United States v. Conservation Chemical Company*, 619 F.Supp. 162, 241 (W.D.Mo.1985) (sale of fly-ash constitutes "arranged for disposal" pursuant to CERCLA § 107(a)(3)); *New York v. General Electric Company*, 592 F.Supp. 291, 297 (N.D.N.Y.1984) (sale of used transformer oil containing PCBs and other hazardous substances constitutes an arrangement for disposal of wastes pursuant to CERCLA § 107(a)(3)).

Court does not believe that to be the case here.[3]

Whether an arrangement for disposal exists depends on the facts of each case. *Florida Power & Light Company v. Allis Chalmers Corp.* 893 F.2d 1313, 1317 (11th Cir.1990).[4] In *Florida Power*, the court noted that there is no per se rule that carves out an exception to CERCLA. Each case in which "arrangement for disposal" is to be construed must be decided by reviewing the totality of the circumstances, on a case-by-case basis. Review of the entire record in the instant case, including affidavits, averments in the complaint, and depositions, indicates that the sale of the transformers was not an arrangement for disposal of hazardous substances. The transformers were not at the end of their useful life as alleged by the government, on the contrary, the evidence indicates that the average age of the transformers involved in this matter was 28 years.[5] According to the government, the average useful life of transformers of this type is about 40 years. Thus the transformers had an average useful life of at least 12 more years at the time ARCO sold them. Further, there is no evidence that the transformers were inoperable or not in working condition at the time of the sale in 1983. On the contrary, the evidence indicates that defendant Stafford, who was in the business of buying and selling used mining equipment paid $1,500 for the transformers and approximately $1,000 to transport them to West Virginia. Even four years after ARCO sold the transformers, defendant Powell testified that the transformers "looked like they were usable transformers," and looked "modern." Powell also had the transformers tested electrically, and apparently found that they were in working order. Finally, the government has provided no evidence that the transformers were so contaminated as to be worthless at the time of the sale. The evidence indicates that four years after the sale, only one transformer was contaminated at levels in excess of 500 ppm PCBs, thus rendering it a "PCB transformer," while six were "PCB-contaminated" with levels at 50–500 ppm PCBs. More importantly, however, even transformers with oil containing PCB had value and could be sold in 1983.[6]

A sale without additional evidence that the transaction includes an arrangement for ultimate disposal of a hazardous substance does not create CERCLA liability. *Florida Power*, 893 F.2d at 1317. Consequently, ARCO is not liable under CERCLA for cleanup costs incurred at the Harrison County PCB Spill Site. Accordingly, it is

ORDERED that Defendant ARCO's Motion for Summary Judgment should be, and the same hereby is, GRANTED. It is further

ORDERED that Plaintiff's Motion for Summary Judgment should be, and the same hereby is, DENIED. In light of the Court's determination of the above-refer-

---

3. Courts generally look beyond defendants characterization of a transaction to determine whether a sale was in reality an "arrangement for disposal" of a hazardous substance. *United States v. Aceto Agricultural Chemical Corp.*, 872 F.2d 1373, 1381 (8th Cir.1989).

4. In *Florida Power*, the Eleventh Circuit affirmed a grant of summary judgment for the manufacturers of PCB-containing transformers because the plaintiff had failed to provide any evidence showing that the sale of the transformers was intended to be a disposal of hazardous wastes. Similarly, in *C. Greene Equipment Corp. v. Electron Corp.*, 697 F.Supp. 983 (N.D.Ill. 1988), a sale of used transformers was held not to constitute a "disposal" or "arrangement for disposal" under CERCLA. The equipment was intact and usable when sold.

5. It is not clear whether this represents the average age in 1983 at the time of the auction, or in 1987 at the time of the discovery of the site.

6. In August 1983, EPA issued a publication about PCB regulations. In this publication, EPA stated that used PCB transformers could be bought and sold. In the same publication, EPA explained that PCB-containing transformers that did not pose a risk of exposure to food or feed could be used and serviced for the remainder of their useful lives. *See* The PCB Regulations Under TSCA: Over 100 Questions and Answers to Help You Meet These Requirements, Revised Edition No. 3, August 1983.

enced motions, defendant ARCO's Motion for a Protective Order is MOOT.

In its Motion, the Government urges the Court to delay granting ARCO's motion on the ground that it requires additional discovery pursuant to Rule 56(f). The government has been aware of the site since 1987 and has conducted extensive investigations. The government subpoenaed information from ARCO and the other defendants in the course of its grand jury investigation. It also queried the defendants pursuant to Section 104(e) of CERCLA, 42 U.S.C. § 9604(e) (1988). Although the government also had the opportunity to seek additional discovery, it did not do so until after ARCO filed the above-referenced motion on January 15, 1991. As such, the Court is of the opinion that the government has not shown a genuine and convincing need for further discovery. Accordingly, it is further

ORDERED that the Government's Motion under Rule 56(f) should be, and hereby is, DENIED.