**KN ENERGY, INC. and Rocky Mountain Natural Gas Company, Plaintiffs,**

**v.**

**ROCKWELL INTERNATIONAL CORP., BTR Dunlop, Inc., and BTR Valve Sealants, Inc., Defendants.**

**Civ. A. No. 93–B–711.**

United States District Court,
D. Colorado.

Dec. 13, 1993.

Steve H. Ozawa, Lawrence J. Corte, KN Energy, Inc., Lakewood, CO, Peter W. Pryor, Rodney R. Patula, Todd E. Kastetter, Kimberly A. Berkman, Pryor, Carney and Johnson, Englewood, CO, for plaintiffs.

Linnea Brown, Lisa A. Schuh, Holme Roberts & Owen, Denver, CO, Fern C. Bomchill, Thomas B. McNeill, Kathleen M. Hennessey, Mayer, Brown & Platt, Chicago, IL, for defendant Rockwell.

Richard K. Clark, Hubert A. Farbes, Jr., Elizabeth E. Brown, Rothgerber, Appel, Powers & Johnson, Denver, CO, Norman B. Berger, Michael V. Casey, Stephen J. Landes, Michael S. Talbett, Holleb & Coff, Chicago, IL, for BTR.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants Rockwell International Corp. (Rockwell), BTR Dunlop, Inc. (Dunlap), and BTR Value Sealants, Inc. (Sealants) (collectively defendants) move pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss plaintiffs' KN Energy, Inc. (Energy) and Rocky Mountain Natural Gas Company (RMNG) (collectively KN) first claim for relief under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607. The motion is adequately briefed and argued. I will deny the motion to dismiss KN's CERCLA claim.

For the purposes of a Rule 12(b)(6) motion to dismiss, I accept all factual allegations as true and resolve all reasonable inferences in favor of the plaintiff. *Tri–Crown, Inc. v. American Federal Sav. & Loan Ass'n*, 908 F.2d 578, 582 (10th Cir.1990). Dismissal is proper only when it appears beyond doubt that no set of facts will support a plaintiff's right to relief. *Gregory v. U.S./U.S. Bankruptcy Court for Dist. of Colorado*, 942 F.2d 1498, 1500 (10th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992).

KN alleges the following relevant facts. Energy operates a natural gas pipeline transmission and distribution company providing gas reserve development, gas gathering, processing, storage, and transportation. RMNG is a division of Energy, operating, among other things, as a local distributor and supplier of natural gas to Colorado customers. KN's pipeline systems contain lubricated plug valves. Starting in the late 1960s, KN purchased from Rockwell and its distributors a sealant and lubricant for its plug valves, Rockwell Sealant No. 860 (RK 860).

Rockwell designed and manufactured RK 860, which contained a form of polychlorinated biphenyls (PCB). In April, 1973, Rockwell stopped producing RK 860 and replaced it with a sealant which did not contain PCB. Rockwell continued to sell RK 860 to KN through the 1970's after Rockwell knew or should have known of PCB's toxic and inherently dangerous characteristics. KN purchased and used RK 860 for its intended use in their natural gas facilities.

KN further alleges that Rockwell's sales of RK 860 to KN constituted a "disposal" of PCB resulting in a release and threatened release of PCB from and on KN's property and facilities. KN also alleges that defendants are persons responsible for releases or threatened releases of hazardous substances pursuant to 42 U.S.C. §§ 9604(a)(4) and 9607 by their actions in manufacturing, generating, transporting, and disposing of regulated hazardous substances resulting in the contamination of and upon KN's property and facilities.

To prevail under CERCLA, KN must establish that: 1) the site on which hazardous substances are contained is a "facility" under 42 U.S.C. § 9601(9); 2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4); 3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with national contingency plan", 42 U.S.C. § 9607(a)(4) and (a)(4)(B); and 4) the defendant is within one of four classes of persons subject to liability under 42 U.S.C. § 9607(a). *3550 Stevens Creek Associates v. Barclays Bank of California*, 915 F.2d 1355, 1358 (9th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991).

The threshold question here is whether Rockwell is within one of the four classes of persons subject to CERCLA liability under 42 U.S.C. § 9607(a). Rockwell and BTR contend that Rockwell is not a "responsible party" under CERCLA because CERCLA does not apply to the sale of useful products.

KN contends that its amended complaint sufficiently alleges that Rockwell is subject to CERCLA liability because Rockwell used the marketplace to dispose of its inventory of a product containing a hazardous substance. KN further argues that Rockwell is liable under CERCLA if KN can prove at trial that Rockwell was not engaged in legitimate sales of a useful product, but rather was disposing or arranging for disposal of hazardous substances by "dumping" them into interstate commerce.

In pertinent part, § 107(a)(3), 42 U.S.C. § 9607, imposes liability upon:

> any person who by contract, agreement, or otherwise arranged for disposal ... of hazardous substances owned or possessed by such person ...

CERCLA defines the term "disposal" using the definitions contained in the Solid Waste Disposal Act. 42 U.S.C. § 9601(29). 42 U.S.C.A. § 6903(3), the Solid Waste Disposal Act, defines "disposal" as:

> The discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such ... hazardous

waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

KN does not allege that Rockwell entered into a contract or agreement for direct disposal of hazardous substances. Nor does it explicitly charge Rockwell with "dumping Rk 860 into interstate commerce". However, fairly read, KN's amended complaint alleges that Rockwell, incident to sales, transported or arranged for the transportation of RK 860 in interstate commerce and this activity constituted or resulted in the abandonment and/or disposal of a regulated hazardous substance and a release or threatened release upon KN's facilities under 42 U.S.C. § 9601. Amended Complaint ¶¶ 26 and 40.

■ The term "arrange" is not defined in the Act. A liberal judicial interpretation of the term is required in order to achieve CERCLA's "overwhelmingly remedial" statutory scheme. *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1317 (11th Cir.1990). Whether an "arrangement" for or "disposal" of hazardous substance exists depends on the facts of each case. *Id.* If a party merely sells a product, without additional evidence that the transaction includes an "arrangement" for the ultimate disposal of a hazardous substance, CERCLA liability would not be imposed. *Id.*

■ Defendants are adamant that Rockwell can not be a responsible party under CERCLA because a seller of a useful product for its intended purpose does not create CERCLA liability. Their protestation to the contrary notwithstanding, defendants advocate a bright line rule that a seller of a new and useful product can never be liable under CERCLA.

I will not adopt such an inflexible rule in the CERCLA context because courts have not hesitated to look beyond defendants' characterizations to determine whether a transaction in fact involves an arrangement for the disposal of a hazardous substance. *U.S. v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373, 1381 (8th Cir.1989); see also *U.S. v. Ward*, 618 F.Supp. 884, 895 (E.D.N.C.1985) (CERCLA liability cannot be avoided by the mere characterization of a transaction as a sale). In construing § 107(a)(3), courts "have liberally interpreted 'arranged for disposal' to include a 'sale' where the sale was an affirmative act to dispose of waste." *U.S. v. Gordon Stafford, Inc.*, 810 F.Supp. 182, 184 (N.D.W.Va.1993). Whether an arrangement for disposal exists is fact intensive. *Florida Power & Light Co.*, 893 F.2d at 1317. Product sales may constitute an arrangement for disposal under CERCLA § 107(a). *U.S. v. Gordon Stafford, Inc.*, 810 F.Supp. at 184.

KN's amended complaint, fairly read, alleges that Rockwell was not engaging in sales of a product, but rather was disposing or arranging for disposal of PCB. These allegations are sufficient to withstand defendants' Rule 12(b)(6) motion.

■ Defendants next contend that the CERCLA claim should be dismissed because KN has not alleged any "release" of hazardous substances *into the environment.* CERCLA defines a "release" as:

any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment ... 42 U.S.C. § 9601(22).

A "release", by definition, must occur "into the environment" before CERCLA liability attaches. *Reading Co. v. City of Philadelphia*, 823 F.Supp. 1218, 1238 (E.D.Pa.1993); 42 U.S.C. § 9601(22). In CERCLA, the "environment" is:

A) the navigable waters, the waters of the contiguous zone, and the ocean waters . . .

B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States. 42 U.S.C. § 9601(8).

KN is not entitled to damages to clean up its own internal facilities and property absent contamination of the external environment. *See 3550 Stevens Creek Associates v. Barclays Bank of California*, 915 F.2d at 1361 (CERCLA does not apply to the release of asbestos fibers within a building because, *inter alia*, there is no release into the envi-

ronment). However, here, it can be reasonably inferred from KN's amended complaint that the hazardous substances at issue were released into the environment. KN's amended complaint repeatedly alleges a "release" and "threatened release". Amended Complaint ¶¶ 40 and 41. The term "release" necessarily means a release into the environment. *See* CERCLA § 101(22); *see generally U.S. v. Smuggler–Durant Min. Corp.*, 823 F.Supp. 873, 876 (D.Colo.1993) (plaintiffs' allegation of release of a hazardous substance at the site meets pleading requirement). Moreover, KN alleges that a release and threatened release of hazardous substances has occurred *from* and on KN's property because of Rockwell's sales of RK 860 for KN's lubricated plug valves. (emphasis added). Amended Complaint ¶ 40. KN's amended complaint sufficiently alleges a release of a hazardous substance into the environment.

■ Finally, defendants argue that the CERCLA claim should be dismissed because KN's complaint fails to allege sufficiently that the release of hazardous substances occurred *from a facility* as required by 42 U.S.C. § 9607(a)(4). They argue that KN's pipelines fall within CERCLA's consumer product exception and, thus, are not a "facility". They also contend that the "facilities" according to KN are their natural gas transmission, compression and processing facilities.

The term "facility" is defined in § 101(9) as: "any building, structure, installation, equipment, pipe or pipeline ..." Section 101(9) excludes from the term "facility" any "consumer product in consumer use ..." CERCLA fails to define "consumer product" or "consumer use".

In arguing that the consumer product exception insulates from liability those engaged in productive activities, defendants rely on *Dayton Independent School Dist. v. U.S. Mineral Products Co.*, 906 F.2d 1059 (5th Cir.1990). In that case, the court held that building materials containing asbestos constituted consumer products. *Id.* at 1065. However, *Dayton* is unpersuasive in light of the more recent decisions in *People of State of Cal. v. Blech*, 976 F.2d 525 (9th Cir.1992)

and *Reading Co. v. City of Philadelphia.*, 823 F.Supp. 1218 (E.D.Pa.1993)

In *Blech*, the court reached an opposite conclusion from *Dayton*, holding that "structures containing asbestos building material as distinguished, for example, from containers of such materials for consumer use, satisfy the broad definition of 'facility' in CERCLA section 101(9). *People of State of Cal. v. Blech*, 976 F.2d at 527 n. 1. Similarly, in *Reading*, the court concluded that railcars used in a commuter train service are not consumer products under CERCLA. *Reading Co. v. City of Philadelphia*, 823 F.Supp. at 1233. The court reached this conclusion by reviewing CERCLA's legislative history and the definition of "consumer product" in Black's Law Dictionary and the Consumer Product Safety Act, a statute in place when CERCLA was enacted in 1980.

Black's Law Dictionary 317 (6th ed. 1990) defines "consumer product" as:

> Any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes ...

The Consumer Product Safety Act defines "consumer product" as:

> any article, or component part thereof, produced or distributed i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise. 15 U.S.C. § 2052(a)(1) (West 1982).

Based on these definitions, I conclude that KN's pipelines and natural gas facilities are not "consumer products".

Moreover, CERCLA's legislative history reveals that the consumer products exception was meant to cover individual consumers. *Reading Co. v. City of Philadelphia*, 823 F.Supp. at 1233. Here, a commercial business is involved, not individual consumers. I am further persuaded by the *Reading* court's analysis because KN's pipelines and natural gas facilities, like the *Reading* railcars, are commercial facilities used to provide a con-

sumer service, i.e gas transmission and train service.

Accordingly, IT IS ORDERED that:

1) Defendants' motion to dismiss KN's first claim for relief under CERCLA is DE-NIED.