The EKOTEK SITE PRP COMMITTEE,
an unincorporated association,
Plaintiff,

v.

Steven M. SELF, et al., Defendants.

Nos. 94–277L, 95–0154L.

United States District Court,
D. Utah.

March 6, 1996.

Robert M. Pomeroy, Jr., Paul D. Phillips, Steven W. Black, Denise W. Kennedy, Holland & Hart, Denver, CO, Lawrence J. Jensen, Holland & Hart, Salt Lake City, UT, David L. Smiga, U.S. Steel, Pittsburgh, PA, Andrea M. Hidvegi, Murray, UT, for Ekotek Site PRP Committee, an unincorporated association, plaintiff.

David J. Schwendiman, Daniel D. Price, U.S. Attorneys Office, Alan David Greenberg, U.S. Department of Justice, Environmental Defense, Denver, CO, David L. Dain, U.S. Department of Justice, Environmental Enforcement Section, Washington, DC, for the U.S.

Derek J. Lobo, Law Offices of Radmila A. Fulton, San Diego, CA, for Steven M. Self, defendant.

Raymond Scott Berry, Green & Berry, Salt Lake City, UT, Douglas J. Parry, Parry, Murry & Ward, Salt Lake City, UT, for A.J. Dean Concrete et al., defendants.

Michele Mattsson, Salt Lake City, UT, for All Western Oil Company, defendant.

James A. Boevers, Prince Yeats & Geldzahler, Salt Lake City, UT, Anne D. Weber, Denver, CO, for American Barrel & Cooperage Company, Inc., et al., defendants.

Barbara K. Berrett, Richards Brandt Miller & Nelson, Salt Lake City, UT, for Andy's Lube Center, defendant.

Alan D. Frandsen, Salt Lake City, UT, for Baxter's Auto Haus et al., defendants.

David P. Kimball, III, Cameron T. Chandler, Gallagher & Kennedy, Phoenix, AZ, for Bud's Oil Service, defendant.

Terry L. Cathcart, Bountiful, UT, for Charles Rockwood, defendant.

Phillip B. Shell, Day Shell & Liljenquist, Murray, UT, for COMTOW, defendant.

John W. Call, Nygaard Coke Vincent, Salt Lake City, UT, John L. Gosbee, Mandan, ND, for Econ Inc., defendant.

Gary Firestone, Stephen F. Crew, O'Donnell, Ramis, Crew, Corrigan & Bachrach, Portland, OR, Douglas J. Parry, Parry, Murry & Ward, Salt Lake City, UT, for Fuel Processors, Inc., defendant.

Phil E. DeAngeli, Cosho, Humphrey, Greener & Welsh P.A., Boise, ID, James A. McIntyre, McIntyre Golden Horgas & Diaz, Murray, UT, Max A. Eiden, Jones Gledhill & Eiden, Boise, ID, for Grease Monkey, defendants.

Byron L. Stubbs, Salt Lake City, UT, for J.C. Bangerter & Sons, Inc., defendant.

Richard K. Chamberlain, Olsen & Chamberlain, Richfield, UT, for Jays Diesel Service, defendant.

David C. McElhinney, Reno, NV, Douglas J. Parry, Parry, Murry & Ward, Salt Lake City, UT, for Lost Dutchman Construction Inc., defendant.

Joy L. Clegg, Snow, Christensen & Martineau, Salt Lake City, UT, Douglas J. Parry, Bret F. Randall, Parry, Murry & Ward, Salt Lake City, UT, for Lynn Harmon Texaco, et al., defendants.

Brent Morgan, Pocatello, ID, Douglas J. Parry, Parry, Murry & Ward, Salt Lake City, UT, for Morgan's Amoco, defendant.

Richard D. Parry, Boise, ID, William G. Dryden, Elam & Burke, P.A., Boise, ID, for Morrison Knudsen Corp., defendant.

Jean R. Babilis, Jean Robert Babilis & Associates, Ogden, UT, for Mort's Transmission, defendant.

Douglas J. Parry, Parry, Murry & Ward, Salt Lake City, UT, Carol L. Lear, Leboeuf

Lamb Greene & MacRae, L.L.P., Hartford, CT, for Milford Fastening Systems, defendant.

Joy L. Clegg, Snow, Christensen & Martineau, Salt Lake City, UT, Allan D. Brock, Carter, Brock & Hinman, P.A., Boise, ID, Douglas J. Parry, Bret F. Randall, Parry Murry & Ward, Salt Lake City, UT, for liaison defendants.

H. Bryce Wade, Salt Lake City, UT, for Valley Ford Sales, defendant.

Randall N. Skanchy, Bruce E. Wycoff, Jones Waldo Holbrook & McDonough, Salt Lake City, UT, for Roto Rooter Sewer Service # 1, defendant.

Alan C. Bradshaw, Holme Roberts & Owen LLC, Salt Lake City, UT, for Lavar Tate, defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff The Ekotek Site PRP Committee (plaintiff) brings this action seeking contribution from defendants for the cost incurred by plaintiff due to the clean up of the Ekotek site. On March 24, 1995, Judge Kelly[1] granted plaintiff summary judgment on three of the four elements necessary to impose primary liability under the Comprehensive Environmental Response, Compensation & Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq. Ekotek Site PRP Comm. v. Self,* 881 F.Supp. 1516, 1531 (D.Utah 1995). Presently before the court is plaintiff's motion for partial summary judgment (Doc. # 612) on the remaining element: whether or not each defendant is a responsible party under section 9607(a).[2] Plaintiff seeks to establish that defendants are liable under section 9607(a) so that plaintiff may seek contribution from those defendants pursuant to section 9613(f). For the reasons stated below, the court makes the following rulings: (1) a defendant need not know where its hazardous substances are disposed in order for liability to attach under section 9607(a)(3); (2) a defendant must intend a transaction to get rid of hazardous substances before that transaction will be considered arranging for disposal under section 9607(a)(3); (3) material questions of fact exist regarding whether or not used mineral oil that has been filtered prior to sale is a useful product; (4) defendant Charles Rockwood has failed to establish that material questions of fact exist regarding his liability; (5) subject to a caveat concerning the question raised about its procedural propriety, Judge Kelly's ruling that used motor oil sent to the Ekotek site constitutes a hazardous substance under section 9601(14) of CERCLA remains the law of the case; (6) the impact of bankruptcy on plaintiff's claims against defendants American Engine X-Change, Inc. and Patterson Farms, Inc. creates material questions of fact regarding whether or not they are responsible parties; (7) material questions of fact exist regarding whether or not defendant J. Monte Wight, Inc. is a person for purposes of CERCLA liability; and (8) defendant Second West Garage, Inc. has failed to establish that material questions of fact exist regarding whether or not it is a person for purposes of CERCLA liability. As a result of these rulings, plaintiff's motion is granted in part and denied in part.[3]

### I. *Standard for Summary Judgment*

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir.1995). A moving

---

1. After Judge Kelly took senior status, the case was reassigned to the undersigned.

2. Defendants Bristol Industries, Inc., Wasatch Transmission, Inc., Ramos Oil Co., Auto Transmission, and Affordable Transmission have filed a motion to withdraw and amend certain responses to requests for admission (Doc. # 642). Plaintiff has not opposed the motion and the court therefore grants it.

3. At the hearing held on the present motion, the court also discussed with the parties future scheduling for this case. It appeared that a June setting for a final pretrial conference would be appropriate. Accordingly, as set out in the order below, a final pretrial conference is hereby set for Tuesday, June 11, 1996, at 9:00 a.m. The location of the conference within the Salt Lake City courthouse and the court's direction to the parties concerning collaboration on an agreed upon proposed final pretrial order will follow in a separate order.

party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemeyer v. Hamilton County Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.*, 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

## II. *Discussion*

The court adopts and incorporates into this Memorandum and Order the statement of facts from Judge Kelly's March 24, 1995 opinion (Doc. # 383). Following Judge Kelly's opinion, plaintiff sent a request for admissions to defendants. These admissions are the sole evidentiary basis for plaintiff's present motion.

■ Liability under CERCLA requires proof of four elements: (1) the site is a facility as defined in 42 U.S.C. § 9601(9); (2) a release or threatened release of a hazardous substance has occurred; (3) the release or threatened release has caused plaintiff to incur certain response costs, and (4) the defendant in question is a responsible person as defined in 42 U.S.C. § 9607(a). *FMC Corp. v. Aero Indus., Inc.*, 998 F.2d 842, 845 (10th Cir.1993). As noted above, Judge Kelly has ruled that the first three elements of liability under CERCLA exist. Plaintiff now seeks summary judgment on element four—that each defendant is a responsible person.

Section 9607(a) creates four classes of responsible persons: (1) the owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person. Various defendants offer various arguments that they are not responsible persons within the meaning of section 9607(a). The court considers each in turn.[4]

---

4. In discussing certain defendants' arguments, the court refers to rulings made by Judge Kelly. In the order section of his March 24, 1995 opinion, Judge Kelly wrote "[t]he plaintiff's motion for partial summary judgment is granted, with the exception of the seventh and last issue asserting that the plaintiff has stated a claim for response costs under § 107(a)." The first six issues on which summary judgment was granted are:

1. The Ekotek site is a facility within the meaning of CERCLA.
2. A release or threatened release of hazardous substances has occurred at the Site within the meaning of CERCLA.
3. Plaintiff has incurred response costs at the site, which, at least in part, were necessary and consistent with the national contingency plan within the meaning of CERCLA.
4. Used motor oil sent to the Ekotek site constitutes a hazardous substance under section 9601(14) of CERCLA.
5. Sending used motor oil to the Ekotek site constituted an arrangement for treatment or disposal of hazardous substances under section 9607(a)(3) of CERCLA.
6. None of the defendants qualify for or meet the requirements of the service station dealers exemption under section 9614 of CERCLA.

## A. *Rocky Mountain Machinery Co. (RMMCO)*

RMMCO argues that summary judgment against it is inappropriate because it "had no idea where the transporter was taking the used oil." Plaintiff counters by asserting that, in his March 25, 1995 order, Judge Kelly rejected RMMCO's defense. Plaintiff also maintains that knowledge of the disposal site is not necessary to impose liability and that a sale can constitute an arrangement for treatment or disposal. RMMCO concedes that it intended to get rid of the used oil and it relies solely on its lack of knowledge defense. The court finds that summary judgment must be granted.

This court believes that plaintiff reads the March 25, 1995 order too broadly. Although the court independently arrives at that very conclusion below, nowhere did Judge Kelly address in his earlier ruling whether or not knowledge of the ultimate destination of waste oil was necessary for liability to attach under section 9607(a)(3). Judge Kelly did rule that personal jurisdiction exists over defendants who periodically sold toxic substances to a company known to be a Utah company in the business of treating such substances in Utah. *Ekotek Site PRP Comm.*, 881 F.Supp. at 1530. He only found, however, that personal jurisdiction existed notwithstanding the defendants' claimed unawareness of their used oil's ultimate destination. *Id.* Similarly, Judge Kelly did not address whether selling waste oil to a transporter which conveyed it to Ekotek was arranging for disposal. Judge Kelly stated that "[s]o long as the defendants are shown to have arranged for the disposal of waste, the characterization of the transfer as a 'sale' will not provide protection from liability under CERCLA." *Id.* at 1527. Judge Kelly also granted summary judgment that "sending used motor oil to the Ekotek site constitutes an arrangement for treatment or disposal of hazardous substances." See note 1, *supra.* Given the ruling below that knowledge of the destination of hazardous substances is not necessary to impose liability under section 9607(a)(3), the court concludes that Judge Kelly's latter ruling does not address a defendant like RMMCO which conveyed oil to a transporter and did not know that the transporter was sending the oil to Ekotek.

■ Arranger liability depends on the facts of each case and must be decided by reviewing the entire record. *See United States v. Gordon Stafford, Inc.*, 810 F.Supp. 182, 185 (N.D.W.Va.1993). The evidence in the record is sparse. RMMCO contracted with a transporter to remove waste oil from RMMCO's premises. RMMCO also contracted with a third party to remove waste oil from the RMMCO waste oil tank. RMMCO does not know what was done with the waste oil once it was removed.

■ Although CERCLA does not define "arranged for," the Tenth Circuit has recognized that CERCLA is a remedial statute, *United States v. State*, 990 F.2d 1565, 1570 (10th Cir.1993), *cert. denied*, 510 U.S. 1092, 114 S.Ct. 922, 127 L.Ed.2d 216 (1994), that must be construed to effectuate its broad remedial purpose. *State v. Idarado Mining Co.*, 916 F.2d 1486, 1497 (10th Cir.1990), *cert. denied*, 499 U.S. 960, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991). The Tenth Circuit has not indicated the standard for liability under section 9607(a)(3). RMMCO contends that, regardless of any other requirement, a defendant must have knowledge of where its hazardous substances are disposed before liability will attach. The court disagrees.

The large majority of courts have held that knowledge of the ultimate disposal destination is not necessary for liability to attach under section 9607(a)(3). *See, e.g., United States v. Fleet Factors Corp.*, 821 F.Supp. 707, 724 (S.D.Ga.1993); *United States v. Hardage*, 761 F.Supp. 1501, 1511 (W.D.Okla. 1990); *United States v. Cannons Engineering Corp.*, 720 F.Supp. 1027, 1046 (D.Mass. 1989), *aff'd*, 899 F.2d 79 (1st Cir.1990). Where a generator directly conveys its hazardous substances to the disposer this proposition has apparently universal application.

When intermediaries exist between the generator and the disposing party, however, the approaches taken by courts diverge. Some courts continue to hold generators liable even though the generator contracted with a transporter, the transporter indepen-

dently chose the disposal site, and the generator had no knowledge of the disposal site. *United States v. Conservation Chem. Co.*, 619 F.Supp. 162, 233–34 (W.D.Mo.1985); *United States v. Ward*, 618 F.Supp. 884, 895 (E.D.N.C.1985). Other courts conclude that where an intermediary exists between a generator and the disposing party, the generator is only liable if it has actual or constructive knowledge of the disposal site. *Chatham Steel Corp. v. Brown*, 858 F.Supp. 1130, 1144 (N.D.Fla.1994) (requiring no knowledge of the disposal site if the transaction is between the generator and the disposer but stating a different standard if intermediaries are involved).

This court believes that the Tenth Circuit would begin its analysis of this issue with the plain language of the statute. Section 9607(a)(3) imposes liability upon any person who "arranged with a transporter for transport for disposal or treatment[ ] of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." The plain language of the statute does not require knowledge of the facility's location. Rather the statute merely requires that the facility be owned or operated by someone other than the defendant.

Contrasting the plain language of section 9607(a)(3) with section 9607(a)(4) reinforces the conclusion that Congress did not intend section 9607(a)(3) to require the defendant to select the facility or know at which facility disposal occurred. Section 9607(a)(4) imposes liability on "any person who accepts or accepted any hazardous substances for transport to ... sites *selected by such person....*" (emphasis added). The Tenth Circuit relied on this plain language in *United States v. Hardage*, 985 F.2d 1427, 1435 (10th Cir.1993) to declare that transporter liability requires the selection of the disposal site by the transporter. This court believes the Tenth Circuit would adopt a similar approach when evaluating section 9607(a)(3). Under that approach, this court concludes that the Tenth Circuit would follow the line of cases holding that knowledge of the disposal site's location is not a requirement to liability under section 9607(a)(3). Thus, plaintiff is entitled to summary judgment against RMMCO.

### B. *Fuel Processors (FP)*

FP maintains that summary judgment cannot be entered on behalf of plaintiff because FP has only admitted that it sold a useful product, filtered used mineral oil, to Ekotek; because the Environmental Protection Agency (EPA) assigned FP responsibility for zero volume; and because FP did not subjectively or objectively intend to arrange for disposal or treatment. Plaintiff replies that Judge Kelly, in the March 24, 1995 Memorandum and Order rejected FP's claims; that the EPA's actions are irrelevant because FP's liability is to plaintiff; and that section 9607(a)(3) does not require proof that a defendant intended that its product be disposed of or treated or that the defendant know the ultimate destination of its hazardous material. The court concludes that summary judgment must be denied.

Judge Kelly has not already rejected FP's claims. Although Judge Kelly did write that "the defendants in the present action are not entitled to invoke the useful products defense," he was referring to used motor oil only. *Ekotek Site PRP Comm.*, 881 F.Supp. at 1527. He noted that the useful products defense focuses only upon whether the product is still fit for its original purpose. *Id.* In the case of used motor oil, continued Judge Kelly, "neither the original refiners of the oil, nor the automobile owners and other persons who then converted the oil to its 'used' status by using it in their engines, did so with the purpose of creating a product which could ultimately be sold for some negligible amount to an oil recycling facility. The used oil created had fulfilled, and was then no longer fit for, its original purpose." *Id.*

█ In contrast, FP has presented facts that Ekotek approached it in 1986 and requested clean usable oil product that could be used as base stock to manufacture automatic transmission fluid. FP sold Ekotek used mineral oil that had been filtered prior to sale. FP conducted this process to produce a new product that has as its original pur-

pose being a base stock for a manufacturing operation. Judge Kelly rejected "the proposition that merely because a valuable substance could, through processing, be reclaimed from an otherwise useless product, that the otherwise useless product was 'new and useful' such that CERCLA liability would not attach." *Id.* at 1526. When viewed in the light most favorable to FP, however, the evidence indicates that the product sold by FP was not otherwise useless absent some further processing; it had already been processed and the valuable substance had already been reclaimed prior to sale. The record raises the inference that oil like that sold to Ekotek can be used as hydraulic fluid, transformer oil, and fuel, apparently without further processing.

In *Douglas County v. Gould, Inc.*, 871 F.Supp. 1242 (D.Neb.1994), the defendant recycler purchased used batteries, melted down the lead plates inside and sold the lead as a product. The court stated that "a reclaimer and seller of lead plates creates a new and useful product which may be incorporated into the buyer's manufacturing process without imposing liability on the seller as an arrangement for its disposal. Had [the recycler's] reclamation site been contaminated, no doubt the battery suppliers would have been liable. But that is not the case here. CERCLA liability will not attach if a transaction involves the sale of a new useful product as opposed to the sale of a substance merely to get rid of it." *Id.* at 1247. Similarly, the court concludes that, when viewed in the light most favorable to FP, there remains a question of fact whether or not FP sold a new useful product and did not sell the used mineral oil merely to get rid of it. Summary judgment, therefore, may not be entered.

■ In addition, FP asserts that it must have intended by its transaction with Ekotek to dispose of hazardous substances before liability will attach under section 9607(a)(3). The Tenth Circuit has not passed on the validity of FP's argument. Other courts have recognized, however, that although liability under section 9607(a)(3) is broad, it is not boundless. The court believes that FP's argument has some merit, although not, perhaps, to the degree that prompted plaintiff to express its concern at the hearing. To the extent that FP focuses on an intent to dispose in the ordinary sense of getting rid of the hazardous substances, the court agrees. To the extent that FP may be attempting to incorporate the statutory definition of "disposal" into its formula, however, the court does not so hold.

Focusing on the plain language of section 9607(a)(3), several courts have concluded that the words "arranged for" imply intentional action. *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 751 (7th Cir.1993), *cert. denied*, 510 U.S. 1044, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1319 (11th Cir.1990); *Redwing Carriers, Inc. v. Saraland Apartments, Ltd.*, 875 F.Supp. 1545, 1563 (S.D.Ala.1995); *G.J. Leasing Co. v. Union Elec. Co.*, 854 F.Supp. 539, 559 (S.D.Ill.1994), *aff'd*, 54 F.3d 379 (7th Cir. 1995); *United States v. Cello–Foil Prods., Inc.*, 848 F.Supp. 1352, 1357 (W.D.Mich. 1994); *see Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651, 654 (N.D.Ill.), *aff'd*, 861 F.2d 155 (7th Cir.1988).[5] Some courts, however, have rejected this interpretation, claiming that it conflicts with CERCLA's strict liability regime, *Chatham Steel Corp. v. Brown*, 858 F.Supp. 1130, 1138 (N.D.Fla.1994), or that it could be used to shield individual officers of a corporation who

---

**5.** The court recognizes that some of these cases also state or suggest that knowledge of the disposal site's location is a prerequisite to liability under section 9607(a)(3). *Redwing Carriers, Inc.*, 875 F.Supp. at 1563; *G.J. Leasing Co.*, 854 F.Supp. at 559; *see Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. at 655 (recognizing that some courts have required knowledge of the location of the disposal before liability will attach). Requiring knowledge of the location of disposal, however, is neither necessary to the conclusion that section 9607(a)(3) requires an

intent to dispose nor consistent with CERCLA's broad remedial purposes. CERCLA does not require that the arrangement be location specific. That is, CERCLA does not require X to arrange for disposal at the facility of Y located at Z (described with particularity). Rather, CERCLA merely requires the arrangement be (1) for disposal or for transport for disposal and (2) at the facility of another. 42 U.S.C. § 9607(a)(3). Requiring intentional action but not knowledge of location reflects these two elements.

deserve liability, *United States v. TIC Investment Corp.,* 68 F.3d 1082, 1089 (8th Cir. 1995).

This court concludes that the Tenth Circuit would follow the approach of the Seventh and Eleventh Circuits and require intentional action before arranger liability attaches. Such an approach would not violate CERCLA's strict liability scheme because CERCLA does not impose strict liability until one is determined to be a responsible party. Nor is this court persuaded that, when coupled with other theories such as piercing the corporate veil, alter ego and agency, requiring intentional action would shield individual corporate officers. Moreover, requiring intentional action is consistent with the plain language of the statute and implicitly recognizes that not all transactions impose arranger liability, a concept that underlies the useful products doctrine, which has become a fixture of CERCLA jurisprudence as well as the law of this case, and the line of cases holding that the mere sale of a product, standing alone, is not "arranging for disposal." *See, e.g., AM Int'l, Inc. v. International Forging Equip. Corp.,* 982 F.2d 989, 999 (6th Cir.1993).

The court does not, by this ruling, hold that the plaintiff must prove intent to cause a "disposal" as that term is statutorily defined. Rather, like the Seventh and Eleventh Circuits, this court finds that the key focus is on the words "arranged for." Those words connote that, in order to hold a person responsible for arranger liability, the person must have intended to "get rid of its hazardous wastes." *Amcast Indus. Corp.,* 2 F.3d at 751. Thus this court, like the Seventh Circuit in *Amcast,* used the word "dispose" in its ordinary sense, not in any statutory sense, at the hearing and in the draft order which it circulated for discussion.

Plaintiff has the burden of proving that FP intended to get rid of its hazardous substances. Such a burden is not onerous. For example, if the evidence were to show that the only basis for selling used oil to Ekotek was for that oil to be recycled, that circumstantial evidence would appear sufficient to establish the requisite intent, *i.e.,* such evidence would show that the purpose of the transaction was to get rid of hazardous substances.

■ Although the burden of proving intent is not onerous, FP's admissions do not suffice to carry that burden. FP has merely admitted that it sold used mineral oil to Ekotek. Without more, that admission does not establish an intent to get rid of hazardous substances. "If a party merely sells a product, without additional evidence that the transaction includes an 'arrangement' for the ultimate disposal of a hazardous substance, CERCLA liability would not be imposed." *Florida Power & Light Co.,* 893 F.2d at 1317. Plaintiff has offered no additional evidence in support of its motion. Therefore, for this reason as well, the court denies summary judgment as to FP.

### C. *Charles Rockwood*

Apparently, Mr. Rockwood questions whether or not he assumed the liability of another through a corporate purchase. Mr. Rockwood claims that since the inception of this case, he has provided plaintiff with the information it has requested with the exception of a couple of pending, minor requests and has made and continues to make a bona fide attempt to settle. Mr. Rockwood admits that he did not file a timely response to plaintiff's request for admissions but states that all information requested had already been provided. Mr. Rockwood does not say what that information is or that the information was in the form of an admission. Without citation to authority, Mr. Rockwood therefore requests summary judgment be denied.

■ Plaintiff replies that, because Mr. Rockwood failed to file a timely reply to plaintiff's request for admissions, Mr. Rockwood has admitted his liability and that whether he is liable as the successor to another entity is unrelated and irrelevant to the question posed by plaintiff's motion. The court agrees with plaintiff's initial contention. Due to Mr. Rockwood's failure to timely respond to the request for admissions, he is deemed to have admitted them. Fed. R.Civ.P. 36(a). In this case, that means that he has admitted, among other things, that he was an arranger with the result that he is a

responsible person. Summary judgment is therefore granted.

### D. *Liaison Defendants (LD)*
#### 1. *General Argument*

The LDs argue that, under Judge Kelly's definition of used motor oil, material questions of fact exist regarding whether or not the LDs' used motor oil is a hazardous substance. Defendants Utah Transit Authority and C.R. England & Sons, Inc. hired a used motor oil expert to test their oil. The expert found that the level of indigenous hazardous substances in the used oil tested was consistent with the levels of indigenous hazardous substances found in crude and refined petroleum. LDs also argue that material questions of fact exist regarding the levels of indigenous hazardous substances found in virgin petroleum products. The LDs assert that without such information, the court cannot determine if the LDs' used motor oil has higher levels of indigenous hazardous substances. The court concludes that this argument has already been rejected by Judge Kelly and therefore grants summary judgment against any defendant asserting this as its sole argument.

On March 24, 1995, Judge Kelly ruled on cross motions for summary judgement. In the memorandum issued regarding those motions, Judge Kelly concluded that the petroleum exclusion did not provide a basis to grant defendants summary judgment. In addition, at the conclusion of the memorandum, Judge Kelly granted summary judgment on the first six issues requested by plaintiff. The fourth of these six was "used motor oil sent to the Ekotek site constitutes a hazardous substance under section 9601(14) of CERCLA." Judge Kelly's ruling thus appears to govern the questions raised by the LDs in their response.

Under the law of the case doctrine, "[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This principle applies to all issues previously decided, either explicitly or by necessary implication." *United States v. Rice*, 1996 WL 44452, at *3 (10th Cir. Feb. 5, 1996) (citations omitted). "The law of the case must be followed unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Cascade Energy & Metals Corp. v. Banks*, 1996 WL 15549, at *2 (10th Cir. Jan. 17, 1996). At oral argument, the LDs asserted that Judge Kelly granted plaintiff summary judgment after evaluating the record in the light most favorable to plaintiff rather than to the LDs as nonmoving parties. Such procedure, if utilized, would constitute clear error and provide a valid basis to set aside Judge Kelly's granting of summary judgment to plaintiff on the used motor oil issue. Because, however, the LDs have not submitted any support for their contention that Judge Kelly employed improper procedure, this court is presently bound by Judge Kelly's ruling that used motor oil sent to the Ekotek site constitutes a hazardous substance. That ruling compels summary judgment on behalf of plaintiff. If the LDs can substantiate their contention that Judge Kelly's procedural approach was improper, they should submit a timely motion to reconsider this order on that basis, supported by a detailed, step-by-step analysis of the summary judgment record then before Judge Kelly.

#### 2. Ramos Oil Co. (Ramos)

Ramos's response to plaintiff's request for admissions was inadvertently omitted from the LDs' responses. Ramos admits selling used motor oil to Ekotek. From the facts before the court, the only argument made by the LDs applicable to Ramos is whether or not used motor oil is a hazardous substance. For the reasons stated above, the law of this case is that used motor oil is a hazardous substance. As a result, summary judgment must be granted.

#### 3. *American Engine X–Change, Inc. (AEX) and Patterson Farms, Inc. (PF)*

AEX and PF assert that plaintiff's claims were discharged when they emerged from Chapter 11 bankruptcy proceedings on October 11, 1995 and September 2, 1988 re-

spectively. Plaintiff replies that AEX and PF failed to respond to the merits of plaintiff's motion and do not dispute that they sent used motor oil to Ekotek. Nor, plaintiff asserts, has AEX or PF filed a cross motion for summary judgment on the basis of an affirmative defense. The court finds that summary judgment should be denied at this time.

■■■ Under appropriate circumstances, *e.g.* when a release of hazardous materials occurs prior to a potentially responsible party's petition for bankruptcy, CERCLA claims are dischargeable in bankruptcy. *See In re Chateaugay Corp.*, 112 B.R. 513, 521 (S.D.N.Y.1990), *aff'd*, 944 F.2d 997 (2d Cir. 1991). Plaintiff has failed to establish the absence of material questions of fact regarding whether its claims against AEX and PF were discharged when these defendants emerged from Chapter 11 bankruptcy proceedings. As a result, summary judgment would be inappropriate.[6]

### 4. J. Monte Wight, Inc. (JMW) and Second West Garage, Inc. (SWG)

JMW and SWG assert that they are dead and buried corporations and therefore not "persons" under 42 U.S.C. § 9601(21) according to this court's March 24, 1995 ruling. Plaintiff contends that JMW and SWG failed to respond to the merits of plaintiff's motion and do not dispute that they sent used motor oil to Ekotek. Nor, plaintiff asserts, has JMW or SWG filed a cross motion for summary judgment on the basis of an affirmative defense. Plaintiff further notes that JMW and SWG have not provided documentation that they are dead and buried. If provided with such documentation, plaintiff states it will dismiss these defendants. The court finds that summary judgment should be denied as to JMW and granted as to SWG.

■■■ In the March 24, 1995 Memorandum and Order, Judge Kelly held that a dissolved corporation holding no valuable assets is not a person within the meaning of CERCLA.

*Ekotek Site PRP Comm.*, 881 F.Supp. at 1531. JMW has submitted a sworn affidavit stating that JMW ceased operations in 1989 and formally dissolved in 1993. This raises a fact question regarding whether or not JMW is a person within the meaning of section 9601(21). Because only a person can be a responsible party under sections 9607(a)(2)–(4), the court cannot declare as a matter of law, that JMW is a responsible party.

■■■ SWG supports its claim that it is a defunct corporation with an unsworn letter, apparently written by SWG's attorney. This letter is neither a sworn affidavit nor subscribed as true under penalty of perjury. Moreover, the letter does not appear to be based on personal knowledge. "Only admissible evidence may be considered by a court when ruling on a motion for summary judgment." *World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir.), *cert. denied*, 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985). This letter is not admissible and does not provide a basis to deny summary judgment. Therefore, summary judgment is denied as to JMW but granted as to SWG.

### 5. Wasatch Transmission, Inc., Affordable Transmission, Auto Transmissions, Bristol Industries, Inc., Morrison Knudsen, Steven M. Self

Plaintiff has withdrawn its motion for partial summary judgment against these defendants and summary judgment is therefore denied as moot.

### E. *Andy's Lube Center (ALC)*

ALC claims the plaintiff agreed that it would not pursue any claim against ALC. Because that agreement has not been finalized, ALC joins in and adopts the LDs' opposition to summary judgment. From the facts before the court, the only argument made by the LDs applicable to ALC is whether or not used motor oil is a hazardous substance. Based on Judge Kelly's ruling that used mo-

---

**6.** The court's denial of summary judgment against AEX is contingent on AEX's making a record showing its discharge within ten (10) days hereof. If AEX fails to produce such evidence, the court will grant summary judgment to plaintiff upon its notification to the court of AEX's failure.

tor oil is a hazardous substance, summary judgment is granted.

### F. *Section 9613(f) versus Section 9607*

In his March 24, 1995 order, Judge Kelly ruled that plaintiff could not bring its claims under section 9607(a) but rather was restricted to a contribution action under section 9613(f). *Ekotek Site PRP Comm.*, 881 F.Supp. at 1521. Because of that ruling, the LDs object to plaintiff's continued inclusion of section 9607 claims in subsequent amended complaints. The LDs also assert that, because of Judge Kelly's ruling, plaintiff's present motion should be denied to the extent it seeks partial summary judgment pursuant to section 9607(a).

As to the LDs first argument, plaintiff has assured the court that it does not, by this motion, seek judgment under 9607(a). Further, the continued inclusion of section 9607(a) claims in the complaint strikes the court as an effort to preserve the record and avoid any argument on appeal that plaintiff has abandoned those claims. Although those claims have been denied as viable here and the case does not go forward on them, plaintiff, as is its right, has not acquiesced in that ruling.

■ In response to the LDs second argument, plaintiff correctly points out that 42 U.S.C. § 9613(f) authorizes "[a]ny person [to] seek contribution from any other person who is liable or potentially liable under section 9607(a)." Thus, seeking partial summary judgment pursuant to 9607(a) is not inconsistent with a contribution action brought under 9613(f). *See Union Carbide Corp. v. Thiokol Corp.*, 890 F.Supp. 1035, 1051 (S.D.Ga.1994). The court does not treat plaintiff's motion as a request to proceed independently on a section 9607(a) theory, nor, in light of Judge Kelly's unchallenged ruling, would this court grant such a request. It is proper, however, to cite section 9607(a) as a vehicle for the section 9613(f) relief plaintiff seeks and the court treats plaintiff's reference to section 9607(a) only in that light.

### III. *Order*

IT IS THEREFORE BY THE COURT ORDERED that the motion of defendants Bristol Industries, Inc., Wasatch Transmission, Inc. Ramos Oil Co., Auto Transmission, and Affordable Transmission to withdraw and amend certain responses to plaintiff's request for admissions (Doc. # 642) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (Doc. # 612) is granted in part and denied in part. As to the following defendants, plaintiff's motion is denied: Fuel Processors, American Engine X–Change, Inc., Patterson Farms, Inc., J. Monte Wight, Inc., Wasatch Transmission, Inc., Affordable Transmission, Auto Transmissions, Bristol Industries, Inc., Morrison Knudsen, and Steven M. Self. As to other defendants listed on plaintiff's second corrected exhibit A and second corrected exhibit B, which were attached to plaintiff's reply (Doc. # 662), plaintiff's motion is granted.

IT IS FURTHER ORDERED that the pretrial conference for this case will occur on June 11, 1996 at 9:00 a.m. at the federal courthouse in Salt Lake City, Utah.

IT IS SO ORDERED.